DAVID S. JOHNSTON, plaintiff in error, vs. ROBERT CRAWLEY, defendant in error.

[1.] Certain persons associated and drew up a declaration and recorded it, agreeably to the act of 1847, authorizing persons to prosecute the business of manufacturing with corporate powers and privileges, and assumed the name of the Madison Steam Mill Company. On the 11th of February 1854, the Legislature passed an act granting corporate powers and privileges to the Madison Steam Mill Company, recognizing it as a body corporate and politic, declaring among other things that it should have, possess and enjoy all the *franchises* which were then held by the said company. Held that these two acts so far as they are consistent with each other make the charter of the company.

[2.] The acceptance of the new act did not destroy the old organization.

[3.] If an agent of a corporation have authority to convey a mortgage, and affixes thereto anything which the law recognizes as a seal when affixed by a natural person, it will be a good execution presumptively by the corporation.

[4.] The purchaser at Sheriff's sale, of property subject to a mortgage with notice of the mortgage, cannot occupy a more favorable position in relation to the property than the mortgagor.

Claim. In Morgan Superior Court. Tried before Judge HARDEMAN, at March Term, 1858.

This was a claim interposed by David S. Johnston to the Madison Steam Mill and the machinery thereto appertaining, which had been levied upon by the Sheriff under a mortgage *fi. fa.*, issued at the suit of Robert Crawley against the Madi-

son Steam Mill Company.  Johnston claimed the property under and by virtue of a sale thereof, made sometime before by the Sheriff, under general judgments and executions against said Company of junior date to Crawley's mortgage.

Crawley's mortgage was dated 25th April, 1855, and judgment of foreclosure 6th March, 1856, *fi. fa.* issued 15th March, 1856.

Upon the trial the plaintiff in execution, Crawley, offered in evidence the mortgage *fi. fa.* and entries thereon; proved that Dr. Elijah Jones acted as President and Albert G. Foster as Secretary of the Madison Steam Mill Company, from December 1854, till it stopped running; that when the Sheriff sold the Mills under the general judgments against the Company, in March 1856, public notice was given that there were several mortgages upon the property of older dates than the judgments; amongst which was the mortgage of Crawley, which had been foreclosed, and that the others were in progress of fereclosure. The property was bought by David S. Johnston the claimant, for $126.  The Company ceased to run the factory in March, 1855.

Plaintiff further proved, that when the same property was subsequently levied upon under his mortgage *fi. fa.* and offered for sale by the Sheriff, that claimant was present, read a paper to the persons then assembled, and afterwards bid for the property, but before it was knocked down, stopped bidding and made known his claim and interposed the same. The amount due on the mortgages, all of which were of older date than the general judgments, was about eighteen or twenty thousand dollars.

1. Claimant offered in evidence the executions, issued on the general judgments, and levied upon the property in dispute, and under which it was sold when he became the purchaser.

2. The deeds of the Sheriff to claimant for the property in controversy.

3. The mortgage to Crawley, under foreclosure of which the *fi. fa.* now levied, issued.  This mortgage had a scroll

(L. S.) opposite the names of E. E. Jones, President, and A. G. Foster Secretary, subscribed to said mortgage, and purporting to be executed by said Company, per said President and Secretary, but no impression of a corporate seal, nor anything purporting to be a seal, except the scrolls above mentioned.

4. Claimant then put in evidence the book of minutes of said Company.

Claimant having closed his testimony, the plaintiff in execution offered as rebutting evidence, the recorded declaration from the records of the Superior Court of Morgan county, of certain persons whose names are thereunto signed, of their having associated themselves as a company, for the purpose of manufacturing into yarn and cloth, the staples of cotton and wool, under the corporate name of " The Madison Steam Mill Company," agreeably to an act of the General Assembly of the State of Georgia, approved 22d December, 1847, entitled " an act to authorize all the free white citizens of the State of Georgia, and such others as they may associate with them, to prosecute the business of manufacturing with corporate powers and privileges." Also, the recorded affidavit of Elijah E. Jones, styling himself President of said company, setting forth the amount of capital stock actually paid in, agreeably to a requirement of the act herein before last mentioned; which evidence was objected to by claimant's counsel, as incompetent in this case, there being already evidence before the Court, showing that subsequently to the recording of said declaration and affidavit, and before the execution of the mortgage upon foreclosure of which plaintiff's execution had been issued; the persons who in their corporate character are defendant in execution, had adopted a different charter, herein before mentioned as set forth in the act approved on the eleventh day of February, A. D. 1854, and thereunder had commenced a new and different corporate existence, which objection was overruled by the Court and the evidence admitted : to which ruling claimant's counsel excepted and do now except.

After the testimony was closed and in the furtherprogress of said cause, when the Court was proceeding to charge the jury, counsel for claimant, requested the Courtto charge the jury, (such req uest and others hereinafter mentioned, being then and there submitted in writing):

1. " That authority to execute a deed, or conveyance of real estate, under seal, must be by instrument under seal : And that this principle of law applies as well to corporations as to natural persons.   If therefore the jury find  that the appoint-ment of Messrs. Jones and Foster, by the corporation, to exe-cute this mortgage was  not by deed, then  they  had no au-thority to act, and the mortgage is void."

Which charge the Court refused to give, and to this refusal counsel for claimant excepted, and do now except :

2. And further, counsel for claimant requested  the  Court to charge the jury ;  " that if the appointment of Messrs. Jones and Foster, by vote of the stockholders (should the jury find the appointment to have been  so made,) had been  sufficient without a  deed, (or without being under seal,) still the law requires that to bind  a  corporation by deed, the  instrument must be under the corporate seal.    That seal need not be  a regular permanent seal of the corporation.    It may be a seal adopted for the time, or purpose;  it may even  be the seal of a private person adopted for the time or purpose ;  but if it be a private seal adopted, such adoption must appear in such  a case as that at bar, by the vote  of those  who have authority to adopt a common seal for the corporation."

Which charge the Court refused to give and to this refusal counsel for claimant excepted, and do now except.

3. And further, claimant's counsel requested the  Court to charge the jury; " that if no  such vote  appear to have been made in this case, and if the mortgage has not appended to it a seal so adopted by the corporation, it is void."

Which charge the Court refused to give, and to this refusal claimant's counsel excepted and do now except.

4. And further, claimant's counsel requested the  Court to

charge the jury; "that a corporation can have but one seal, and therefore the seals of both Elijah E. Jones and Albert G. Foster could not have been the seals of the corporation."

Which charge the Court gave to the jury, but added thereto; that under all the circumstances of this case the corporation having held Jones out to the world as President, and Foster as Secretary thereof; and the stockholders having by vote or resolution, authorized the President and Secretary to execute a mortgage to the plaintiff, the Court held the private seal of Elijah E. Jones, affixed to his name with the official designation of President, to be a sufficient sealing by the corporation, and that the mortgage executed as it was, is valid and binding to all intents and purposes.

To which addition to the charge thus requested, complainant's counsel excepted, and do now except:

5. And further, the Court was requested to charge the jury; "That if Messrs. Jones and Foster had been legally appointed agents to execute this mortgage, they should have executed it in the name of their principal, and in order to do this, should have signed the name of their principal accompanied by the seal adopted by the principal, and not have signed their own names alone with their private seals, and if the jury find that they have not thus appended to the mortgage the name and seal of their principal but their own, the mortgage is void."

Which charge the Court refused to give, and the claimant's counsel excepted, and do now except to such refusal.

6. And further, the Court was requested to charge the jury; "that this deed, executed as it is, when its terms are considered and construed by the Court, is found not to be executed in the name and with the seal of the corporation, for the seals of the President and Secretary cannot be the seal of the corporation."

Which charge the Court refused to give, and the claimant's counsel excepted, and do now except to such refusal.

7. And further, the Court was requested to charge the jury;

"that the corporation, the defendant in this case, derives its existence from the act of our Legislature, (or charter) approved February 11th, 1854; and in such a corporation, by the law of the land, the administrative capacity, or capacity to execute deeds or mortgages, belongs to the officers of the corporation, that is to say, in this case, to the Directors, President and Secretary.

Which charge the Court refused to give, and to that refusal the claimant's counsel excepted and do now except.

8. And further, the Court was requested to charge the jury; " that until such officers (the Directors, President and Secretary) were elected, although the charter had been accepted by the stockholders, the corporation lacked such organization as would enable it to do any such act as the execution of a deed."

Which charge the Court refused to give, and to that refusal claimant's counsel excepted and do now except.

9. And further, the Court was requested to charge the jury; "that if these last two propositions be not true generally, still, in this case, the capacity or power to do the administrative act of executing this mortgage belonged alone to the President and Secretary of the corporation, if the jury shall find, from the evidence, that the stockholders had instructed the President and Secretary to do it."

Which charge the Court refused to give, and to that refusal claimant's counsel excepted and do now except.

10. And further, the Court was requested to charge the jury; " that if then they should find (from the evidence) that there had been no election of President and Secretary after the acceptance of this charter, and before the execution of this mortgage, then the deed was not executed by the President and Secretary of the corporation. In such event, Elijah E. Jones and Albert G. Foster had no authority to execute this mortgage; and the same is void as against the rights of the judgment creditors, under whose executions this property was sold, when it was purchased by the claimant."

Which charge the Court refused to give, and to that refusal claimant's counsel excepted and do now except.

11. And further, the Court was requested to charge the jury; "that if for either of the above reasons, or for all, this mortgage is found to be void as against all or either of the judgments under which said property was sold by the Sheriff, and purchased by the claimant, then, in the language of the Supreme Court, 'The relation, in this respect, which the claimant bore to that judgment, was the same which the plaintiffs, in the general judgments, had borne to that judgment,' and and the interest which he had in the property 'was the interest which he acquired by purchasing it when sold under their judgments. What those plaintiffs had the right to sell, then, under their judgments, was what he purchased,' and he must recover as against the plaintiff in execution."

Which charge the Court refused to give, and to that refusal claimant's counsel excepted and do now except.

12. And further, the Court was requested to charge the jury; "that the ratification of an imperfect and invalid deed must itself be by deed."

Which charge the Court refused to give, and to that refusal claimant's counsel excepted and do now except.

13. And further, the Court was requested to charge the jury; "that neither the ratification and adoption of an act or instrument, originally defective; nor, (in this case) the subsequent adoption of the President's private seal as the seal of the corporation, can affect the rights of third persons, acquired before such ratification and adoption."

Which charge the Court refused to give, and to that refusal claimant's counsel excepted and do now except.

14. And further, the Court was requested to charge the jury; "that if they should find that the mortgagors and their former associates, had not published, once a week for two months, in the two nearest Gazettes, their declaration of association under an Act of the General Assembly of this State, entitled 'An Act to authorize all the free white citizens of the

State of Georgia, and such others as they may associate with them, to prosecute the business of manufacturing with corporate powers and privileges,' approved December 22d, 1847 ; and had not published in the two nearest Gazettes, once a week for one month, the oath or affirmation of the President of said corporation, of the amount of the capital actually paid in and employed by said corporation, they acquired no corporate rights under that proceeding."

Which charge the Court refused to give, adding that the law would presume compliance with these requirements ; and to that refusal and charge, claimant's counsel excepted and do now except.

15. And further, the Court was requested to charge the jury ; "that if said mortgagors and their former associates did acquire any corporate rights by their proceedings under the act of 1847, (before mentioned) and were in law, under the same, duly incorporated, that incorporation ceased when they adopted the statutory charter, under the Act of the General Assembly, entitled ' An Act to grant corporate powers and privileges to the Madison Steam Mill Company.' "

Which charge the Court refused to give, and to that refusal claimant's counsel excepted and do now except.

16. And further, the Court was requested to charge the jury ; "that the mortgagors although entitled to all such franchises as they acquired under the Act of 1847, (aforesaid) and their proceedings under it, not inconsistent with the said statutory charter, nevertheless upon the acceptance of that statutory charter, commenced a new corporate existence, and were bound, before they could exercise the granted corporate rights, to organize under that charter, by the election of a Board of Directors and through them of a President and Secretary."

Which charge the Court refused to give, and to that refusal claimant's counsel excepted and do now except.

17. And further, the Court was requested to charge the jury ; "that the charter of the Madison Steam Mill Compa-

ny, having fixed and limited the character of the securities to be given by them for loans and debts, to-wit: 'bonds or promissory notes'; the Company was not capable of giving a security by mortgage."

Which charge the Court refused to give, and to that refusal claimant's counsel excepted and do dow except.

The jury found the property levied on subject to the execution; whereupon the claimant excepted.

CUMMING; REESE; STARNES; and JENKINS, for plaintiff in error.

CONE, contra.

*By the Court.*—McDONALD, J. delivering the opinion.

The points presented in this record may be resolved into the following: Was there an existing corporation, duly organized with power to act at the time of the execution of the alleged mortgage? If there was such a corporation, was the instrument properly and legally executed either by the corporation itself or its legally constituted agents, in a manner to bind the corporation? If it was not so executed, can the corporation or the claimant, under the facts of the case, take advantage of the defect, and defeat the rights of the mortgagee?

[1.] The Madison Steam Mill Company owed its corporate existence, originally, to a declaration drawn up by certain persons as stockholders under the Act of 1847, authorizing persons to prosecute the business of manufacturing with corporate powers and privileges. It assumed the corporate name of "The Madison Steam Mill Company." On the 11th day of February, 1854, the Legislature passed an Act to grant corporate powers and privileges to the Madison Steam Mill Company. That Act treats the Company as an existing corporation. The first section enacts that the persons therein named, and their associates, should be known, distinguished

and *recognized* as a body corporate and politic.   It not only vests the Company with the property, real and personal, which they then held; but declared also that they should have, possess and enjoy *all the franchises* which were then held by the said Company.

Here is a recognition of the Company as a *corporate body*, and a confirmation to it of all the *franchises* which it then held.   There is no repealing clause to the Act.   It is an amending and confirmatory Act.   The name of the Company is not changed, and many of its most important powers are to be looked for in the Act under which it derived its original corporate existence.   The old charter is not annulled, except so far as there is an irreconcilable repugnancy between that and the later Act as accepted by the Company.   Every Act legally done under the old charter, is as valid and binding as it would have been had the Act of 11th February, 1854, never been passed.   That Act infringes no rights which the Company or the public acquired under the Act of 1847.

These two Acts, so far as they are consistent with each other, make the charter of the Madison Steam Mill Company. To the two Acts we must look for the faculties, powers and privileges of the Company.   When the stockholders met on the 1st of May, 1854, to accept the charter of the 11th of February before, they met as the stockholders of the Madison Steam Mill Company.

[2.] The adoption of the charter of 18th February did not destroy the organization under the old Act.   There is nothing in the last Act incompatible with the continuance of that organization until there was an election agreeably to the directions of the Act.   The Act of 1854 does not declare when the first annual meeting of the stockholders for the election of directors, should be held.   The stockholders met on the 3d of March, 1855, and authorized the President and Secretary to execute mortgages to secure debts due to persons for borrowed money, and for cotton purchased on a credit.   The mortgage was executed on the 25th April, 1855.   For the

reasons assigned, we think that at the date of this mortgage, the Madison Steam Mill Company was an existing corporation, with an organization and capacity to act.

Was the mortgage legally executed, so as to bind the corporation?

[3.] The mortgage is drawn with the manifest purpose that the name of the corporation should be signed thereto, and the corporate seal affixed.

It is signed by the President and the Secretary, with their own names, (signed officially,) with a scroll to each name for a seal. In England the property of a corporation can be conveyed away under the common seal only. Natural persons must convey lands there, under seal, and the seal must be impressed on wax, a wafer or other impressible substance. This rule, in many of the States of this Union, has been much relaxed, and a scroll has, by Legislative enactment or judicial decision, been held to be sufficient. Our own Legislature has, in very strong language, declared that the annexation of a scroll instead of a seal on wax, wafer or other tenacious substance, shall be a sufficient execution of a sealed instrument. *Cobb* 274. If it shall be sufficient in the case of a natural, why not in the case of an artificial person? The statute makes no distinction. If it be proved to be the seal, that is sufficient. But the name of the corporation is not signed; that of the President and Secretary only. A corporation executes conveyances under its corporate seal. But an artificial person cannot, like a natural person, write its name. Its corporate name being subscribed would not give the instrument greater validity. Messrs. Angel and Ames say that they "see no reason, unless the Act of incorporation expressly provides what the common seal shall be, why the substitute allowed for the private seal of an individual should not also be allowed for the seal of a corporation." They know of no decision upon the subject. *Ang. and A. on Cor. Sec.* 218. "A corporation as well as an individual person, may use and adopt any seal. They need not say that it is

their common seal." *Mill Dam Foundry vs. Hovey* 21. *Pick Rep.* 428. If they adopt a seal different from their corporate seal for a special occasion, or if they have no corporate seal, the seal adopted is the corporate seal for the time and the occasion. If a corporate body choose to adopt a scroll as their common seal, why may it not do it? It cannot, at common law, because a scroll cannot, by that law, be a seal. But a scroll is made a seal by statute in this State, and there is no reason why it may not be adopted by a corporation here, either as a common seal, or as a seal for a special purpose. The same kind of proof which would establish, if disputed, the authenticity of the genuine common seal in a particular instance, would equally establish the authenticity of a scroll as the corporate seal; to-wit, that it was affixed by authenticity, express or implied, of the corporation. The vote of a competent board of directors that the corporate or other seal was directed to be used, is not necessary. It may be proved otherwise. If an agent of a corporation have authority to convey or mortgage its property, and he execute the conveyance or mortgage, and affix thereto anything that the law recognizes as a seal, when affixed by a natural person, it will be a good execution presumptively, by the corporation. *A. and A. on Cor. Sec.* 226. In England, when an Act of Parliament empowers the directors of a company to enter into contracts, the contracts need not be under seal. *Grant on Corp.* 67. In this case, however, the mortgage is under seal, and under the favor of its execution, to render it valid, it must be held to be the seal of the corporation.

If the seal was put there by the agents of the company, legally constituted for that purpose, then it is the seal of the corporation, and the mortgage is valid and binding.

The agent of a corporation aggregate, to bind the principal by deed, need not be appointed by deed. It is sufficient if he be appointed by vote. *A. and A. on Corp. Sec.* 224. The agents by whom the mortgage before us was executed, were appointed by a meeting of the stockholders. If they

had power or authority to make the appointment, there can be no question of its validity. As a general rule, when a corporation is created by statute, or, in England, derives its charter from the Crown, and the statute or charter prescribes the mode in which contracts shall be made, that mode must be pursued. I say, this is the general rule. If the Act or charter be silent, then the rule of the common law prevails. "It was incident, at common law, to every corporation, to have a capacity to purchase and alien lands and chattels, unless they were specially restrained by their charters or by statute. Independent of positive law, all corporations have the absolute *jus dispenendi*, neither limited as to objects nor circumscribed as to quantity." 2 *Kent* 281. This corporation, under its original organization, was restricted in the quantity of real and personal property which it might own, to such as was necessary for the purposes of its incorporation, or such as it might be obliged to take in the settlement of debts due to it, and it was vested with power to dipose of it. Its mode of action was not prescribed. There was to be a President, but how and in what manner it might alien or dispose of its property is not prescribed; nor is the mode of alienation prescribed in the Act of 1854. Prior to the organization under that Act, the stockholders directed mortgages to be executed to secure debts for borrowed money and cotton purchased on a credit. There is nothing restrictive of this power in the statutes. The direction in the 3d section of the Act of 11th February, 1854, to the stockholders to elect, at an annual meeting, seven directors to manage and control the affairs of the Company, does not restrict this power. This general power of management and control confers no authority to borrow money for the use of the Company, much less to mortgage and sell its property. By the 6th section of the Act, the stockholders of the Company might, by a vote of two-thirds, authorize the directors to borrow money. This positive regulation forbids the inference that the directors had that or any analogous power un-

der the third section.   If they had no such power, there was
no restriction of the common law power to dispose of the
property through any other instrumentality; and the Presi-
dent and Secretary were the chosen agents for that purpose.

The resolution of the stockholders was, therefore, a com-
petent authority to them to do the act.   It follows, therefore,
that as Jones and Foster, President and Secretary, were the
legally constituted agents of the Company to make the mort-
gage, the seal affixed by them is presumptively the seal of
the Company, and that the Company is bound by it.

[4.] We might stop here; but it seems proper to us, to say
a few words in regard to another view of this case.

At the sale of the property at which the plaintiff in error
became the purchaser, notice was given publicly, that it was
sold subject to certain mortgages amounting to about $20,000.
The property was worth about twenty thousand dollars.   The
mortgage under which this case comes up, was stated to have
been foreclosed, and the others were in process of foreclo-
sure.   The judgments under which plaintiff in error became
the purchaser, were of prior date to the mortgages.   He pur-
chased the entire property for the sum of one hundred and
twenty-six dollars.   There is no pretence that the debts se-
cured by the mortgages were not *bona fide* debts due by the
Company to the several creditors who held them.   The
Madison Steam Mill Company intended to secure the debts
by mortgages.   The instruments were intended as mortga-
ges: the plaintiff in error, at the time of his purchase, had
not only the notice which the law implied from their hav-
ing been recorded, but he had actual notice of their exist-
ence, and that if he purchased, he would purchase subject
to them.   He purchased the equity of redemption only, and
the amount of these mortgages is the balance of the consid-
eration which, by his agreement, he is bound to pay if he re-
tains the property.   The mortgage creditors, under our sys-
tem of foreclosure, have a legal judgment which they have
a right to enforce against the mortgaged property.   If there

was a power, and that power had been defectively executed, as is insisted, equity, under the evidence in this case, would aid the creditor against the purchaser, in either executing it, or correcting it so as to give it legal effect and operation from its date.

Now that it is in a condition to be enforced at law, it would not interfere in behalf of such a purchaser to resist the plain demands of justice, and that according to his own agreement.

The claimant could not present a case in equity that a Chancellor would listen to for a moment.

He would be obiiged to allege, if he stated his case fully and truly, that he had purchased property worth $20,000 for the sum of $126; that at the time of the purchase he had notice of mortgages, to which the property was subject, to an amount equal to the value of the property, some of which had been foreclosed, and others were then in process of foreclosure; that he purchased the property subject to them, but that he had discovered the mortgages had not been so executed as to create a lien on the property, and he prayed the Court to protect his legal title. His cause would not be entertained for a moment by a Court of Chancery. It would not aid him to escape from the consequences of his own agreement fairly and openly made, with no circumstance of fraud, imposition or hardship against him, to commend him to its favor. The disparity between the value of the property and the consideration paid for it, would alone prevent a Court of Equity from giving aid to the purchaser.

According to the view we have taken of this case, the mortgagors could not have resisted the foreclosure of the mortgages, and the plaintiff in error cannot occupy a more favorable relation to the case. He purchased the property subject to them, and if he wishes to retain it, he must pay the mortgages.

Judgment affirmed.