## JONES et al. v. EZELL et al.

1. Where creditors of an insolvent corporation file a petition praying the appointment of a receiver and a sale of the corporate assets, and that from the proceeds of the sale the debts of the corporation be paid and the balance, if any, distributed among the stockholders, and the corporation answers admitting its insolvency and the indebtedness of the complaining creditors as alleged, and a receiver is appointed, minority stockholders who allege that the claims of the principal creditors are based on ultra vires acts of the corporation and its officers, in fraud of the stockholders' rights, and that they have been unable to obtain relief from the corporation, may intervene for the purpose of contesting the claims of such creditors.

2. As the stockholder's right to intervene in suits against a corporation brought by its creditors springs from the refusal of the corporation to assert a meritorious defense which the corporation has to the action, such defense must be pleaded with the same particularity as if made by the corporation.

3. A mortgage deed, reciting that it was executed by virtue of the charter of the corporation, as well as under a resolution of the stockholders copied in the mortgage, authorizing the board of directors, through its president and secretary, to issue, sell, or hypothecate first-mortgage bonds on the property and franchises of the corporation for a certain amount and in certain denominations, and maturing at stated intervals, and purporting to be the mortgage of the corporation, and signed, "B. W. H. (L. S.), President, E. B. E. (L. S.), Secretary," though no corporate seal be impressed thereon, is nevertheless prima facie the mortgage of the corporation.

4. Allegations by intervening stockholders in a creditors' petition against the corporation, that the officers of the corporation were without authority to execute a mortgage upon which the corporate seal is not impressed, but which recites that it is executed under authority of a resolution of the stockholders, and allegations that neither the corporation nor its officers had authority to create the indebtedness of complaining creditors, are sufficient, as against a general demurrer, to raise the issue that such acts are ultra vires.

5. General and loose allegations, consisting merely of the statement of conclusions, without averring the facts upon which the conclusions are based, are too indefinite to raise an issue.

JUNE 14, 1910.

Equitable petition—intervention. Before Judge Lewis. Putnam superior court. March 16, 1909.

A. E. Wilson, Robert McMillan, and R. B. Blackburn, for plaintiffs.

W. B. Wingfield and W. F. Jenkins & Son, for defendants.

EVANS, P. J. Certain creditors of the Middle Georgia Cotton Mills filed a petition in the nature of an insolvency proceeding

against that corporation, praying the appointment of a receiver, a sale of its assets, and a distribution of the proceeds. It was alleged, that the corporation was insolvent; that it had shut down its factory, and was unable further to operate, for lack of finances; that the manufacturing plant was rapidly deteriorating in value; that petitioning creditors represented substantially nine tenths of its liabilities, nearly half of which were past due; and that the corporation had failed to pay the past-due indebtedness on demand. The corporation in its answer admitted its insolvency and its indebtedness to the petitioning creditors. A receiver was appointed. Certain minority stockholders filed an intervention, to which the petitioning creditors interposed demurrers, general and special. The court dismissed the intervention on general demurrer, without passing upon the various special demurrers; and the intervenors except to this judgment.

One of the petitioning creditors was the trustee for the first-mortgage bondholders, in whose behalf it was alleged that the corporation had issued 80 bonds in denominations of $500, bearing interest at the rate of six per cent. per annum, payable semi-annually, on January 1 and July 1, and secured them by a mortgage on all of the property, real and personal, of the corporation, executed to the trustee on August 1, 1901. A copy of the mortgage was attached; and it recites that at a meeting of the stockholders of the Middle Georgia Cotton Mills, held on July 10, 1901, the following resolution was adopted: "Resolved that the board of directors, through its president and secretary, be and they are hereby authorized to issue and sell or hypothecate, from time to time, first-mortgage bonds on the property and franchises of the Middle Georgia Cotton Mills, for a sum not exceeding the sum of forty thousand dollars; to bear interest at the rate of 6 per cent. per annum, payable semi-annually, and in amount of $500.00 each and payable as herein set forth, viz.: $5,000.00 payable July 1, 1906; $10,000.-00 payable July 1st, 1911; $15,000.00 payable July 1st, 1916; and $10,000.00 payable July 1st, 1921." It was further recited in the mortgage that under this resolution the directors of the corporation had issued bonds as therein provided, and, in order to secure their payment according to their tenor and effect, B. W. Hunt and E. B. Ezell, secretary of the said Middle Georgia Cotton Mills, by virtue of the authority contained in the charter of the corporation,

as well as the authority of this resolution, created in favor of the trustee a mortgage lien upon all the property, both real and personal, of the corporation, specifically described. The mortgage concluded with the clause, "In testimony whereof we hereby set our hands and seal of the corporation, this 1st day of August, 1901. Benj. W. Hunt (L. S.), President. E. B. Ezell (L. S.), Secretary." It purports to have been signed, sealed, and delivered in the presence of two witnesses, one of whom was a magistrate. It was further alleged, that the trustee had actually sold and delivered 61 of the bonds, amounting to $30,500, to certain named persons, and that the remaining 19 bonds, of the face value of $9,500, were held as collateral security by 5 of the complaining creditors. All the interest due on the bonds to January 1, 1908, except $330, had been paid. It was further alleged, that others of the complaining creditors, whose debts were evidenced by notes, were secured by hypothecation of the 19 unsold bonds; that one of the creditors was secured by a bill of sale to some of the manufactured product of the corporation, and still another creditor was secured by the personal indorsement of the president and secretary of the corporation. It was also set out in the petition that the corporation had outstanding preferred stock to the extent of $24,000, by the terms of which a holder had no voting power as a shareholder, but was entitled, upon final dissolution of the corporation, to be paid, after the payment of the creditors, in preference to the common stockholders, and that the corporation had an outstanding issue of common stock to the extent of $65,329.56.

In their intervention the stockholders alleged, that they were the owners of 76 shares of the common stock and six shares of the preferred stock, each of the par value of $100; that prior to the filing of the creditors' bill they had filed suit against the corporation, praying for the appointment of a receiver and the repudiation of the bonds and a part of the stock, and for the winding up of the business of the corporation and a distribution of its assets, based upon allegations of want of authority on the part of the officers to issue the bonds and stock; that they had complained to the proper officers of the corporation, prior to filing their intervention, of the illegalities in the issuance of the bonds and stock as set up in their intervention, and requested them to take proper steps for the protection of their interests as stockholders; that the corpora-

tion had wholly failed to do this, and in its answer had admitted substantially all of the allegations of the complaining creditors and had refused to set up any defense having for its purpose the cancellation of the bonds and the mortgage to secure same, and all of the common stock in excess of the original issue of $40,000; that "exhibit A attached to said petition, which plaintiffs term a mortgage, is not in fact a mortgage, is barred by the statute of limitations, it has no consideration, no authority was given the officers to execute the same, and said paper, whatever it may be, is simply the individual undertaking of B. W. Hunt and E. B. Ezell, and is not binding on said defendant, nor its legal stockholders; . . . that neither said defendant nor its officers have any authority to create the indebtedness specified in the petition, nor to execute said notes, nor to give the securities and collaterals therein set out."

Inasmuch as the court did not pass upon the various special demurrers to this and other allegations in the intervention, the only point for determination is whether they are sufficient to withstand a general demurrer. The stockholder's right to intervene in suits against a corporation brought by its creditors springs from the refusal of the corporation to assert a meritorious defense which the corporation has to the action, and such defense must be pleaded with the same particularity as if made by the corporation. Helliwell on Stocks and Stockholders, § 417; *Cornell* v. *Sims,* 111 *Ga.* 828 (36 S. E. 627). It is contended that if the corporation should undertake to defend against the trustee's suit to recover on the mortgage, it would be necessary for the corporation to allege in its pleadings that it had not received the proceeds of the bonds secured by the mortgage, or that the same had not been applied to legitimate corporate uses. We do not think it incumbent upon the corporation, in making its defense of lack of authority of its officers to execute the contract, to plead that the corporation had received no benefit from the contract. A recovery is not sought upon the original consideration, but upon the form of the contract; and the corporation may plead that its officers did not have authority to execute the contract. We are discussing a question of pleading, and not the effect of evidence showing that the proceeds of the contract were received by the corporation and applied to legitimate corporate use. If on the trial of the case it should appear that the officers were without authority to execute the various con-

tracts, but did in fact execute them, and the fruits thereof were applied to proper corporate use, the corporation will still be liable, notwithstanding its officers may have been without specific authority to execute the particular form of contract. The corporation can not retain the property or money of the creditor, and successfully defend because it was obtained by an ultra vires act of its officers. *Towers Excelsior Co.* v. *Inman*, 96 *Ga.* 506 (23 S. E. 418). A plea by the corporation that the act is ultra vires is one thing; evidence which holds the corporation responsible for the consideration of the contract in spite of its ultra vires character is quite a different matter. The stockholder, in the absence of specific acts of fraud and collusion between the corporation and the creditor, has no greater right than the corporation itself in this regard.

We will now enquire if the mortgage is in such form as to show it prima facie to be the act of the corporation. It shows upon its face that the agents of the corporation were acting in its behalf, and not for their personal benefit. It is stated that the corporate seal is to be affixed; yet, so far as the record discloses, the original mortgage was never impressed with the corporate seal. If the corporate seal had been impressed, the law would have raised a presumption that it was within the power of the agents of the corporation to execute the mortgage, and it would be clearly a corporate act. Nevertheless, if agents of the corporation have authority to execute a mortgage and affix thereto anything which the law recognizes as a seal when affixed by an actual person, it will presumptively be a good execution by the corporation. Inasmuch as the mortgage deed recited that it was executed by virtue of the charter of the corporation, as well as by resolution of its stockholders authorizing its board of directors, through its president and secretary, to issue, sell, and hypothecate first-mortgage bonds on the property and franchises of the corporation for a certain amount and in certain denominations, and maturing at stated intervals, and purporting to be the mortgage of the corporation and signed by "B. W. H. (L. S.), President, E. B. E. (L. S.), Secretary," though there be no impression of the corporate seal, nevertheless it is presumptively the mortgage of the corporation. *Johnson* v. *Crawley*, 25 *Ga.* 316 (71 Am. D. 173.) It being executed under seal, it is not barred on its face by the statute of limitations, and its expressed consideration is for the securing of the bonds issued by the

authority of the stockholders themselves. Intervenors allege that no authority was given the officers to execute the mortgage and create the indebtedness. As already stated, we are not called upon to pass upon the sufficiency of this allegation as against appropriate special demurrers: as to whether the act of the officers in executing the bonds and mortgage was ultra vires the corporation or ultra vires the officers, or whether it was a denial that the officers had kept within the limitations of their power under the resolution passed by the stockholders in the execution of the instrument complained of. Where the officers' authority to execute a mortgage or note not impressed with a corporate seal is contested, we think that a general denial of authority is sufficient to form an issue, in the absence of a special demurrer calling for particularity in specification as to such lack of authority.

Intervenors undertake to contest the claims of the creditors by general allegations asking proof of their claims, without alleging any specific matter tending to deny that they are the debts of the corporation. These allegations go for naught, because, as we have pointed out, where minority stockholders undertake to set up a defense which the corporation refuses to make, they must allege the facts constituting the defense, in order that the courts may determine whether such defense is a meritorious one, or one which the officers of the corporation, having due regard to the interest of the complaining stockholders, were bound to make.

It is also alleged in the intervention, in general terms, that all the common stock issued in excess of $40,000 was null and void. In the absence of any express provision or agreement to the contrary, persons who have become stockholders in a corporation by subscribing or purchasing shares have a right to presume that other stockholders have come in on the same terms; and if the corporation has issued stock in violation of its charter or the law, or in violation of the rights of its stockholders, a dissentient stockholder may maintain an independent action in order to cancel the illegal stock. 2 Clark & Marshall on Private Corporations, § 397. The dissentient stockholder in an insolvency proceeding instituted by creditors, having for its purpose to sell the entire assets of the corporation for distribution, may likewise intervene in that proceeding, for the purpose of objecting to the holders of illegally issued stock participating in the corporation's surplus, if any, after the payment of

the corporation debts. However, in his intervention the dissentient stockholder must allege the facts relied on to establish the illegality of the stock, and a general allegation that all stock issued over a certain amount is null and void is but the statement of a legal conclusion, and is insufficient, even as against a general demurrer. General allegations of this sort are analogous to a general charge of fraud, without stating any specific fact upon which the charge is based, which has always been held too loose and indefinite to withstand a general demurrer. *Orr* v. *Brown,* 5 *Ga.* 400.

It is also alleged in the intervention that the president and treasurer have neglected to collect a part of the amount subscribed for the original issue of stock, which amount could have been collected. Manifestly an allegation so general as this presents no issue. Intervenors further "deny the authority of the defendant or its officers to execute said notes and to give any security, and thereby obtain a preference and advantage to themselves, they being also officers and directors of said defendant." This complaint is made of the indebtedness held by E. B. Ezell and B. W. Hunt, the Middle Georgia Bank, of which they are both directors, and the firm of Ezell & Company, which is a partnership composed of these individuals. It is true that officers of a corporation are trustees, and a sound public policy forbids the assignment to them of any of the corporate assets while the corporation is insolvent, with a view to prefer them as creditors for antecedent debts. *Atlas Tack Co.* v. *Macon Hardware Co.,* 101 *Ga.* 391 (29 S. E. 27). It does not appear from the record whether the security claimed by these creditors was given at the time of the creation of the debt, or was assigned to secure an existing debt, with the intent of giving them preference as creditors.

We have presented in our discussion of the pleadings substantially all of the contentions made by the intervenors from the standpoint of their sufficiency as against a general demurrer; and the judgment of the court below is reversed, because the allegations respecting the authority of the officers of the corporation to contract certain debts and secure the same by mortgage and other collateral security were sufficient to withstand a general demurrer.

*Judgment reversed. All the Justices concur.*