WALKER *v.* BERGER *et al.*

The court erred in disallowing the proffered amendment, and in dismissing the petition.

No. 864.   AUGUST 13, 1918.   REHEARING DENIED SEPTEMBER 14, 1918.

Equitable petition. Before Judge Pendleton. Fulton superior court. November 15, 1917.

It appears from the petition of Walker against Berger and Revson, that on December 8, 1915, the parties entered into a contract reciting, in brief, as follows: In consideration of the dismissal of a pending suit (in which Berger and Revson were praying for a decree rescinding a previous contract between them and Walker, and for a money judgment against him, etc.), and of certain sums of money paid, and of the mutual agreements and stipulations herein contained, Walker releases Berger and Revson from all liability under the previous contract, and it is rescinded and annuled; and Walker is released from all liability thereunder and on account of its procurement; and Berger and Revson agree to look solely to the assets of Cherokee Medicine Company to reimburse them for all payments made by them to or for Walker and for advancements to the business of the company just named. To them he releases and quitclaims the assets of the company, except that (besides one adding-machine) "the formula for Old Indian Liver and Kidney Tonic and Old Liver and Kidney Herbs, the trade name Cherokee Medicine Company, and Old Indian Liver and Kidney Tonic trademarks, trade devices, and charter for said company are reserved by said Walker, and not included herein." Walker grants to Berger and Revson "the exclusive right, for a period of thirty days from date hereof, to manufacture from quinine now on hand, to wit 650 ounces, and such additional materials as may be necessary to be procured to work up and consume the quinine now on hand (the total amount so manufactured and sold not to exceed 45000 bottles), Old Indian Liver and Kidney Tonic, and to fill from such medicine orders now on hand, and get new orders for the purpose of disposing of the manufactured products . . during said period of thirty days; but after the expiration of said thirty-day period Revson and Berger shall have no right whatever to manufacture or sell Old Indian Liver and Kidney Tonic, . . except that they shall have the right to sell such of said medicine as may be acquired by them from customers who have actually had such

medicines in their possession; provided, however, that none of such medicines shall be resold . . until same shall have been offered to Walker" at three fourths of the original selling price; and should he not accept it as offered and pay for it within two days, the other parties may sell it whenever they can. A discount of any. customer's account shall not be deemed a resale. Immediately at the expiration of the thirty-day period they shall furnish to Walker a complete statement of all goods so manufactured or sold. He shall not engage in the manufacture and sale of the tonic or herbs for sixty days. After that period he shall have the right to manufacture and sell them; and all orders received after that time by any of the parties shall be immediately turned over to Walker as his property. He shall not interfere with the other parties in the collection of their accounts; and they shall deliver to him, at or before the termination of said period, the good will of the business, the charter of the company, the trade names before mentioned, and the formulas of the medicines, and shall not thereafter use the same, except that, during a period of six months from date of this contract, they may continue to use the names of the company and of the tonic, and the coupons and literature thereof, in working druggists' mailing lists, for the purpose of collecting and reducing to cash the accounts hereinbefore quitclaimed, and may sue in the name of the company to collect any accounts or choses in action owned by them. After six months they are to discontinue working mailing lists, and are to collect or sue in their own names. They shall not write any letters or put out any literature detrimental to Walker or the company, or that criticizes or reflects on him or his management. Mail received by any of the parties shall be distributed in a stated manner. They will not cut the price of the tonic for a limited period. Walker may have copies made, within thirty days after the sixty-day period, of all mailing lists in the business, about 770 in number, and may use or sell them. The other parties, at the end of the sixty-day period, will turn over to him all stationery, circulars, cards, coupons, and other literature of the company, "excepting only such part of same as they may deem reasonably required to work mailing lists from time to time thereafter to collect in their accounts;" and they will pay to Walker all commissions that shall become due to him under his salesman's contract with them; etc.

In January, 1917, Walker brought his equitable action, alleging several breaches of the contract and fraudulent acts by Berger and Rcvson, resulting in damage to Walker in the sum of $25,000, for which he prayed judgment. He prayed also for temporary and permanent injunction against them; and for discovery, setting forth eleven interrogatories as to the details of their conduct and dealings with the company and the manufacture and sale of the medicines, etc. A general demurrer for want of statement of a cause of action was overruled; but a special demurrer on numerous grounds was sustained, with leave to amend the petition within thirty days. To the latter ruling the plaintiff excepted pendente lite; but afterward he presented an amendment of his petition, striking the allegations therein which set forth the defendants' acts in violation of the contract and in fraud to the plaintiff, and the prayer for judgment in damages and (in part) that for injunction; and alleging in substance the following: The defendants did not, on January 8, 1916, cease manufacturing the tonic, but continued to manufacture such tonic from day to day in the regular course of business during the first six calendar months of 1916. They did not manufacture only so much of the tonic (according to the formula delivered to them by Walker) as would consume 650 ounces of quinine (which would be not over 5516 bottles), but they did manufacture much more tonic than they were entitled to, and, instead of manufacturing only 5616 bottles, they manufactured over 27000 bottles of such tonic. They did not, on January 8, 1916, cease to sell such tonic as they had manufactured prior thereto, but after that date they continued to sell such tonic as they manufactured between December 8, 1915, and January 8, 1916, and such as they manufactured after the latter date. Such sales were made daily in the regular course of their business. They did not, on February 8, 1916, cease taking all orders for such medicine, and turn over to plaintiff all orders which thereafter came in, but continuously from day to day, and in the regular course of their business, accepted and filled orders for such medicine, and now are continuously soliciting, accepting, and filling such orders. The plaintiff has no adequate remedy at law for recovery of damages for previous or future breaches of the contract; to endeavor to recover for such breaches would require a multitude of suits, as each of such improper sales constitutes a separate and independent cause

of action; the prosecution of such suits would be vexatious and complicated, because it would be impossible for the plaintiff or the court to trace out, with any degree of certainty, each of a multitude of individual sales which defendants have made or will make, or to ascertain wherein and how much each improper sale peculiarly damaged the plaintiff; and only by an accounting between the parties and by injunction can he obtain an adequate remedy against the defendants for such improper sales. He prays, that each of the defendants, individually and by their agents and employees, be temporarily and permanently enjoined from selling to anybody either of the medicines already named; and that they be required to account to him for all profits received by them from the improper sales of medicine as before described; and that general relief be afforded.

The defendants filed a demurrer and objections to the amendment, on numerous grounds, in brief as follows: The allegations and prayers relating to accounting set up a new and distinct cause of action. By originally bringing a suit for damages the plaintiff made an election of remedies, and is therefore barred from seeking for an accounting. It does not appear from his allegations and prayers that he is entitled to an accounting, but it appears therefrom that he is not so entitled; and sufficient facts to authorize an accounting are not set forth. Like objections are taken to the allegations and prayers for injunction, it being contended that it appears that the plaintiff is not entitled to injunctive relief. The allegation that according to the formula the defendants could not have manufactured more than 5616 bottles of tonic from 650 ounces of quinine adds to and varies from the terms of the contract, under which the defendants had the right to manufacture at least 45000 bottles of tonic; and no copy of the formula is exhibited. The allegations relating to manufacture and sales of medicines, and to soliciting, accepting, and filling orders, are vague, indefinite, and uncertain, and constitute mere conclusions of the pleader; the dates of the transactions, the amounts of tonic manufactured, and the persons to whom it was sold are not set forth; it is not specifically alleged what particular orders (giving dates, amounts, and names) the defendants have not turned over to the plaintiff, nor what of such orders they have accepted and filled and are now accepting and filling. It does not appear that there was an absolute duty upon them, under the contract, to turn over orders to the plaintiff;

nor does it appear that he has complied with the condition of the contract. The amendment does not meet the ruling of the court on the original petition and demurrer; and after omitting the stricken portions there is not enough in the petition to amend by.

The court sustained the demurrer and objections, and dismissed the action. The plaintiff excepted.

*Moore & Pomeroy* and *Charles E. Cotterill,* for plaintiff, cited, on equity pleading: Van Zile, Eq. Pl. & Pr. § 459; *Cothran* v. *Scanlan,* 34 *Ga.* 555; Civil Code, §§ 5413, 6510. Accounting: Root *v.* Ry. Co., 105 U. S. 189, 205 (26 L. ed. 975); 1 C. J. 627, § 80; 30 Cyc. 965, note 63; *Merchants &c. Bank* v. *Boyd Co., 143 Ga.* 755 (85 S. E. 914). New cause not alleged: *Dearing* v. *Bank,* 6 *Ga.* 581.

*Reynolds & Whitman,* for defendants, cited, on pleading: Civil Code, § 5538; *Thomas* v. *Walker,* 115 *Ga.* 11 (41 S. E. 269); *Bentley* v. *Crummey,* 119 *Ga.* 911 (47 S. E. 209); *Robson* v. *Harwell,* 6 *Ga.* 589; *McGehee* v. *Jones,* 10 *Ga.* 127. New and distinct cause: Civil Code, § 5683; *Long* v. *Bullard,* 59 *Ga.* 355; *Hart* v. *Henderson,* 66 *Ga.* 568; *White* v. *Moss,* 67 *Ga.* 89; *Roberts* v. *Ins. Co.,* 71 *Ga.* 478; *Lamar* v. *Russell,* 77 *Ga.* 307 (2 S. E. 467); *Ellison* v. *Ga. R. Co.,* 87 *Ga.* 691 (13 S. E. 809); *Glaze* v. *Bogle,* 105 *Ga.* 295 (31 S. E. 169); *Brand* v. *Power,* 110 *Ga.* 522 (36 S. E. 53); *Horton* v. *Smith,* 115 *Ga.* 66 (41 S. E. 253); *Roberts* v. *Atlanta Real Estate Co.,* 118 *Ga.* 502 (45 S. E. 308); *Cox* v. *Ga. R. Co.,* 139 *Ga.* 532 (77 S. E. 574); *Christian* v. *Ross,* 145 *Ga.* 284 (88 S. E. 986); *McKenzie* v. *Loew Mfg. Co., Calhoun* v. *Arnold,* 21 *Ga. App.* 33, 37 (93 S. E. 504, 506). Election of remedy: *Equitable Ins. Co.* v. *May,* 82 *Ga.* 646, 655 (9 S. E. 597); *Board of Education* v. *Day,* 128 *Ga.* 156, 164 (57 S. E. 359); *Shaw* v. *Jones,* 133 *Ga.* 446 (66 S. E. 240); *McClellan* v. *McClellan,* 135 *Ga.* 95 (68 S. E. 1025); *Mitchell* v. *Castlen,* 5 *Ga. App.* 134 (62 S. E. 731); *Kennedy* v. *Manry,* 6 *Ga. App.* 816 (66 S. E. 29); *Rowe* v. *Sam Weichselbaum Co.,* 3 *Ga. App.* 504 (60 S. E. 275); *Wright* v. *Zeigler,* 70 *Ga.* 501. Accounting; no demand and refusal alleged; legal remedy, and measure of recovery: Gregory *v.* Spieker, 110 Cal. 150 (42 Pac. 576, 52 Am. St. R. 70); Howard *v.* Taylor, 90 Ala. 241 (8 So. 36); Taylor *v.* Howard, 110 Ala. 468 (18 So. 311); Wetzstein *v.* Boston &c. Mining Co., 28 Mont. 451 (72 Pac. 865); Ayotte *v.* Nadeau, 32 Mont. 498 (81 Pac. 145); Alywin *v.* Morley, 41 Mont. 191 (108 Pac. 778); Seattle

National Bank v. School Dist., 20 Wash. 368 (55 Pac. 317) ; Stein
v. Benedict, 83 Wis. 603 (53 N. W. 891) ; Davis v. Collier, 13 Ga.
485; Gould v. Barrow, 117 Ga. 458 (43 S. E. 702). Injunction:
McCaskill v. Bower, 126 Ga. 341 (54 S. E. 942).

GILBERT, J. 1. The assignment of error on the exceptions
pendente lite will not be considered, because the petitioner offered
an amendment to meet the demurrer (which was conditionally sus-
tained), thus submitting to the ruling. Adams v. Ga. Ry. &c. Co.,
142 Ga. 497 (83 S. E. 131).

2. The defendants contend that the amendment should not be
allowed, because, after paragraphs five to nineteen of the petition
were stricken, there was not enough left to amend by. The same
amendment which struck these paragraphs, also added other para-
graphs in lieu of those stricken. The desired additions to the peti-
tion need not be made by a separate amendment before the objec-
tionable portions are stricken, when the same end may be reached
by one amendment striking the parts desired to be eliminated, and
at the same adding the allegations desired in lieu thereof. "It is
better to preserve what has been done and improve it than to throw
it away." Ellison v. Ga. R. Co., 87 Ga. 691 (2), 697 (13 S. E.
809). As to what constitutes enough to amend by, see Idem,
692 (6).

3. Striking the allegation that the plaintiff was damaged in a
specified sum and adding a prayer for accounting did not set up a
new and distinct cause of action. "No new and distinct cause of
action is added to a petition by an amendment which contains addi-
tional matter descriptive of the same wrong pleaded in the original
petition, and which does not plead any other or different wrong."
City of Columbus v. Anglin, 120 Ga. 785 (5), 793 (48 S. E. 318).
See Causey v. Causey, 106 Ga. 188, 193 (32 S. E. 138).

4. "It is well settled that the discoverer of a medical prepara-
tion or formula, even though such preparation be not patentable,
has, like an author or an inventor, a property right in the product
of his mental labors. This right was recognized at common law,
independently of copyright or letters patent. . . One who, by
reason of confidential business relations with the discoverer, has
gained possession of his trade secret, will be restrained by a court
of equity from betraying the trust reposed in him by using the
formula for his own gain." Stewart v. Hook, 118 Ga. 445, 446,
447 (45 S. E. 369, 63 L. R. A. 255). "The jurisdiction of equity

to restrain the infringement of trade-marks is exercised for the protection of a legal right in property." Bispham's Principles of Equity (9th ed.), § 456 et seq.; High on Injunctions, § 1021. The allegations and prayer for an accounting are incidental and appropriate to the relief by way of injunction. Civil Code, § 4632; *Hagan & Dodd Co.* v. *Rigbers,* 1 *Ga. App.* 100 (57 S. E. 970); Roberts v. Vest, 126 Ala. 355 (28 So. 412). This is particularly so under the facts of this case. The breaches of contract, if true as alleged in the petition, are peculiarly within the breast and knowledge of the defendants, and discovery by them affords the most complete and satisfactory method for the ascertainment of the facts. For the reasons stated we think the court erred in disallowing the amendment and dismissing the petition. We will not rule upon the special demurrers, as the effect of the judgment of the court was to dismiss the suit in its entirety, without reference to the special demurrers.          *Judgment reversed. All the Justices concur.*