## GEORGIA HUSSARS *v.* HAAR *et al.*

1. "A public corporation is one having for its object the administration of a portion of the powers of government, delegated to it for that purpose — such are municipal corporations. . . All others are private, whether the object of incorporation be for public convenience or individual profit, and whether the purpose be, in its nature, civil, religious, or educational." *Held*: Applying the comprehensive definition embraced in the two sections of the Code just quoted (§§ 2190 and 2191), the plaintiff in error is not a public corporation.
2. "If officers of a corporation executed, even though without previous authority, a transfer of title to land belonging to it, and thereby procured a loan, which was subsequently renewed on the same security, the corporation could not retain the fruits of the transfer and at the same time successfully defend against it as being unauthorized."
3. Even if the provision in the deed for commissions to be paid the trustees is void for uncertainty, this did not render the deed unenforceable as security for the debt owing to the grantee in the deed; and there was no abuse of discretion on the part of the trial judge in refusing to enjoin the enforcement of the deed according to the terms of the power included therein.

No. 3360.   July 11, 1923.

Petition for injunction. Before Judge Sheppard. Chatham superior court. June 23, 1922.

Georgia Hussars brought an equitable petition, alleging its corporate existence by virtue of an act of the General Assembly, approved December 15, 1859, and that it is a corporation organized for the purpose of maintaining a military corps of cavalry in the City of Savannah; that pursuant to its charter powers, by-laws were adopted for the management of its corporate affairs and the regulation and conduct of its business, under which the organization has functioned since its incorporation; that the corporation has no capital stock, since it was organized and exists for a public purpose, and that its property was acquired by donations from various patriotic and public-spirited citizens, and that it now holds and owns valuable real estate in the City of Savannah, upon which is located a military armory, used by the organization for military purposes. The petition further alleges that a deed to secure debt, purporting to have been executed by the Georgia Hussars, conveying the real estate of the corporation, consisting of its military armory, in favor of F. H. Haar, to secure a loan of $55,000, besides interest at the rate of 8 per cent. per annum, was in the process of being foreclosed; and that W. M. Farr had been appointed trustee, under the powers contained in this deed, for the

purpose of selling the property at public outcry, before the court-house door of Chatham County, in order to collect the principal and interest of the loan, besides trustee's commissions, costs, and expenses incident to the foreclosure. Certain portions of the by-laws are set out in the petition, showing that the administration of the finances and business affairs of the corporation are vested in an executive committee, who are in the sole control of the financial affairs of the organization and the care and management of the property, and that the deed to secure debt, under which the foreclosure was proceeding, was executed by M. B. Hutton, former captain of the Georgia Hussars, but that the same was made and executed without the consent or authority of the executive committee, and that the deed as an act of the Georgia Hussars is void and of no effect.

By amendment it was further alleged that the property of the Georgia Hussars is exempt from levy and sale under such process, for the reason that the corporation is a public corporation, and not liable to levy and sale, as in the case of private corporations; that the deed is vague and uncertain as to the amount to which the trustee would be entitled as commission for services rendered; and that the deed contains contradictory and inconsistent clauses in regard to the amount of commissions allowed the trustee, which render the same void and unenforceable. Injunction was sought to permanently restrain the holder of the deed and the trustee from exercising the powers of sale stipulated therein, and to pro-hibit the trustee from collecting commissions of "not less than ten per cent.," or other large sums which may be designated by the trustee as commission, either upon the amount secured by the deed, or upon the amount which the property might bring at public sale.

At the hearing the court refused an interlocutory injunction, and the plaintiff excepted.

*W. W. Gordon, McIntire, Walsh & Bernstein,* and *Saussy & Saussy,* for plaintiff. *Lawrence & Abrahams,* for defendants.

BECK, P. J. (After stating the foregoing facts.)

1. As grounds for its contention that the court erred in re-fusing an injunction, the plaintiff advances and insists upon three essential principles of law as being involved in the controversy and controlling upon the merits thereof: first, that the deed to secure

the debt, having been executed without corporate authority, is not binding upon the corporation; second, plaintiff is a public corporation, and its property is not subject to levy and sale, and no valid lien can be attached thereto; third, that the terms of the deed to secure the debt, in regard to trustee's commissions, are, because of vagueness, uncertainty, and inconsistency, unenforceable. The grounds of error in the judgment excepted to are in the order stated above; but we will take up for consideration, in the first place, the second ground urged,— that is, that the property of the corporation is not subject to levy and sale, and no valid lien can be created thereon, because it is a public corporation. The conclusion that the property is not subject to levy and sale is based upon the contention that the debtor is a public corporation. The plaintiff is a corporation under the provisions of an act of the General Assembly of Georgia, approved December 15, 1859. Under the provisions of that act it is incorporated in the name of Georgia Hussars, and it is in that act vested with all the rights and powers of a corporation, the right to hold real and personal property, make by-laws for its organization and government, etc. It was incorporated without capital stock, for the purpose of maintaining the Georgia Hussars, a voluntary military corps of cavalry in the City of Savannah, Georgia. It became a body corporate, and adopted certain by-laws and regulations for its corporate management and affairs. From time to time since its incorporation it has received donations from different individuals, which donations were invested in the property involved in this controversy and used by the troops for an armory. As a military organization the Georgia Hussars, it is insisted, performed public duties, is subject to the Governor's command, and the fact is pointed out that on many occasions it has performed military duty outside of the county of its residence.

We do not think, for any of the reasons urged or stated, or because of any other facts inferable from the character of the organization constituting the corporation in question, that it is a public corporation,— that is, in the sense of that term as used in our law. We turn to our statute for a definition of a public corporation; and section 2190 of the Civil Code, containing that definition, is as follows: " A public corporation is one having for its object the administration of a portion of the powers of govern-

ment, delegated to it for that purpose — such are municipal corporations." The next section declares that " All others [all other corporations] are private, whether the object of incorporation be for public convenience or individual profit, and whether the purpose be, in its nature, civil, religious, or educational." In the case of *Cleaveland* v. *Stewart, 3 Ga.* 283, we find the following definition of a public corporation: "A corporation is public when it has for its object the government of a portion of the State; and although in such a case it involves private interests, yet as it is endowed with some portion of political power, the term 'public' has been deemed appropriate. . . Incorporation gives to many institutions, as banks, railroads, colleges, schools, and such like, a certain public character; the public are interested in them, and they subserve valuable public purposes; but they are not legally public corporations." These comprehensive, clear-cut definitions are sufficient in themselves to uphold the ruling of the court to the effect that the Georgia Hussars is not a public corporation, but that it falls rather in that class of institutions which are given by the act of incorporation a certain public character, and in which the public are interested, which subserve public purposes, but which are not " legally public corporations."

2. Another contention of the plaintiff in error is that the deed is not binding upon the corporation, because it was executed without the corporate authority. With this contention we can not agree. In passing upon the question we must consider the form of the deed, and also the circumstances under which it was executed, the purposes for which it was given, the consideration for it, and the use which was made of the money procured. The instrument was executed by the captain commanding and ex-officio president of the plaintiff corporation. Corporations can only act through their duly authorized officers and agents, and then with in the sphere of their respective duties. The court below, passing upon the issues of this case and the evidence adduced relative to those issues, found, as it was authorized to do under the evidence, that the captain commanding and ex-officio president of the corporation was the officer who on previous occasions had executed deeds to secure debt on the property involved in this case, for and on behalf of the plaintiff corporation. It is true that the evidence discloses that in the instances referred to he was au-

thorized by the executive committee, and perhaps the members also, of the corporation, while in the present instance no authority given by the executive committee is shown. But it does appear that a duly certified resolution, apparently genuine on its face, giving authority to the officer in question was presented to the defendant, Haar, and his attorney. It is true it is shown that this resolution had not been passed or adopted by the corporate authority, but it is referred to as showing that the lender acted in good faith and without knowledge that the resolution had not been regularly adopted by the corporate authority. The money was paid over to the plaintiff, as the court found and was authorized to find, in good faith by the lender. The corporate seal, it is true, was not attached, but this would not necessarily void the deed. The signature of the captain commanding and ex-officio president of the corporation is followed by the symbol "(L. S.)." The court was authorized to find that the members of the corporation must have had knowledge that the loan had been effectuated and the money applied to an existing debt of the corporation. Certainly the court was authorized to find that the members and officers of the corporation were aware of the fact that the property of the corporation was encumbered, that the debts were pressing, that it was necessary to procure money to relieve the pressure, and that the pressure had been relieved. It is claimed by the plaintiff that under its by-laws the control of its financial affairs was vested in the executive committee, consisting of eleven members; and that the security given to the defendant was not a valid deed, because it was not authorized by the executive committee. The evidence shows that the defendant had no knowledge of these by-laws; and the existence of the by-laws can not avail the plaintiff in this case, for a corporation can not be relieved of its liability to third persons for the acts of its officers by reason of any by-law or other limitation of the power of the officer, not known to such third person. Civil Code, § 2225. In the case of *Bank of Garfield* v. *Clark*, 138 *Ga.* 798 (76 S. E. 95), it was said: "If officers of a corporation executed, even though without previous authority, a transfer of title to land belonging to it, and thereby procured a loan, which was subsequently renewed on the same security, the corporation could not retain the fruits of the transfer and at the same time successfully defend against

it as being unauthorized." And in the same case the following ruling is quoted from *Jones* v. *Ezell,* 134 *Ga.* 553 (68 S. E. 303), approved and applied: "If on the trial of the case it should appear that the officers were without authority to execute the various contracts, but did in fact execute them, and the fruits thereof were applied to the proper corporate use, the corporation will still be liable, notwithstanding its officers may have been without specific authority to execute the particular form of contract. The corporation can not retain the property or money of the creditor, and successfully defend because it was obtained by an ultra vires act of its officers." And the writer of the opinion in the case of *Bank of Garfield* v. *Clark,* after quoting the ruling last above set forth, cites other authorities to the same effect, and concludes: "If it should be proved that the company obtained the bank's money by means of this transfer of title as security, and used it, the company would not be permited to keep the fruits of its officers' acts and at the same time repudiate the contract, although there may have been no formal resolution authorizing the giving of the security." Other cases decided by this court might be cited in support of the ruling made, but many of them are referred to in the cases above cited. We think these authorities are controlling on the question under consideration.

But the conclusion reached, that the judge below did not err in not holding the deed to be invalid under the circumstances, is strengthened by a consideration of the evidence in the record, which affords grounds for the presumption that the executive committee referred to above, in whom was vested control of the financial affairs of the corporation, had ceased, very largely, to perform its functions, if it had not ceased to function altogether. This is an inference which the court below was authorized to draw from the evidence in the case, and is not stated as a fact shown by positive and direct evidence. It is clearly inferable from the entire testimony taken together, certainly the trial judge was authorized to find, that the financial condition of the corporation was not a healthy one; and if the finance committee had not ceased to function and had taken up the financial affairs of the corporation, they would have found it to be in a situation which would have required of them to take the step which was actually taken by the commanding officer, or to adopt some similar measure.

3. The provision in regard to the trustee's commissions does not seem to be so indefinite as to be unenforceable. But this should not be taken as a final ruling upon that question; for, irrespective of whether the provision for the trustee's commission was enforceable or not, the court was authorized under the evidence to refuse the injunction, and there was no abuse of discretion in so doing.

*Judgment affirmed. All the Justices concur.*