24090. CORBIN SUPPLY COMPANY *v.* LOFTIS *et al.*

DECIDED NOVEMBER 2, 1934. REHEARING DENIED JANUARY 19, 1935.

*C. C. Stone, Martin, Martin & Snow,* for plaintiff in error.
*M. Felton Hatcher, William A. McClain,* contra.

GUERRY, J. W. S. Loftis and others suing as partners under a trade name brought suit against the Corbin Supply Company upon a written obligation as follows: "Georgia State Association of Master Plumbers. Edgewood Ave. and Ivy St., Atlanta, Ga. August 5, 1930. In consideration of the donations of others, we hereby agree to pay to the Educational Bureau of the Georgia State Association of Master Plumbers the sum of twenty-five and no/100 dollars ($25.00) per month on or before the 10th day of each month for a period of twelve months beginning August, 1930. Corbin Supply Company per A. C. Luhn." The defendant answered, denying the indebtedness, and pleaded that A. C. Luhn was a mere employee of the defendant and was without any power or authority to bind it in its corporate capacity. It pleaded further that even if A. C. Luhn did have authority to bind the corporation, such a contract was an ultra vires act, being nothing more than a gratuitous donation from which the defendant derived no benefit. Upon the trial the plaintiffs showed by their evidence that some months prior to the signing of the contract C. C. Corbin, the president of the defendant company, was called upon by the plaintiff with refer-

ence to joining the Educational Bureau of the Master Plumbers Association, and the plaintiff was directed to take the matter up with A. C. Luhn, who was at that time in charge of the plumbing department of the Corbin Supply Company. It was further shown that the master plumbers and the wholesalers handling plumbers supplies had formed an educational committee for the purpose of causing better co-operation between the plumber and such wholesalers and for the introduction of better methods in handling the business, both by the plumbers and by the wholesalers furnishing to them their supplies. Half of the expense of this educational campaign was to be borne by the plumbers and half by the wholesalers, its purpose being to promote, stimulate, and encourage the business of both parties. The sum of $6000 was required for this work in Georgia. There was held in Macon on August 5, 1930, a meeting of the representatives of certain wholesale plumbing houses and of the plumbers of the State, in which the matter was discussed. A. C. Luhn attended this meeting as representative of the Corbin Supply Company, and when subscriptions for this work were being taken he announced that he was not in a position at that time to make a subscription, but that he would take the matter up with his employer and report after the noon hour. He came back to the meeting after the lunch hour and brought the subscription signed as set forth in the petition. Seven other wholesalers or supply houses signed and paid similar subscriptions. In March, 1931, after the contract was signed, A. C. Luhn became general manager of the Corbin Supply Company, and in answer to a letter written by the plaintiffs to the Corbin Supply Company acknowledged the making of the subscription and asked that time be given in which to make the payment. This letter was signed, "Corbin Supply Company." There was evidence from the other signers to the effect that the entering into the plan fostered by the educational committee had proved to be very helpful to their sales. At the conclusion of the evidence for the plaintiffs the following motion for nonsuit was made: "We move for nonsuit on the ground that it affirmatively appears from the evidence that this contract was ultra vires and beyond the corporate powers of the mill supply corporation to make. We have proven it by Mr. Turlington himself, who stated he was familiar with the Corbin Supply Company and that it was mill-supply busi-

ness." The court sustained the motion and nonsuited the plaintiff. Certiorari was taken to the superior court, and upon a hearing thereof the certiorari was sustained, and this order of the superior court judge is excepted to in this proceeding.

■ We will consider first the question as to the obligation being ultra vires. The doctrine of ultra vires has been declared to be entirely the creation of the courts and is of comparatively recent origin. 14 C. J. 314. The term is used in a variety of ways, and its meaning is to be gathered from the sense or context in which it is being used. An illegal transaction, in the sense of being in violation of a statute, is an ultra vires act. A corporate transaction may be illegal in the true and proper sense, or it may be ultra vires without being illegal. When corporate acts are spoken of as ultra vires it ordinarily is not meant that they are illegal, but that they are not within the power conferred upon the corporation by its charter. The great weight of authority in all the States today is to the effect that a transaction which is merely ultra vires is, if performed by one party, not void as between the parties, and that an action may be brought directly thereon. A corporation may be estopped from claiming that a transaction was ultra vires to the extent that it has been performed by the other party. This doctrine has been followed by the Georgia courts and made especially applicable to private corporations. "The law sustains a defense of ultra vires only where an imperative rule of public policy requires it." *Towers Excelsior Co.* v. *Inman,* 96 *Ga.* 506 (23 S. E. 418). See also *Bankers Trust & Audit Co.* v. *Hanover Nat. Bank,* 35 *Ga. App.* 619 (134 S. E. 195). "The doctrine of ultra vires has no proper place in the law of private corporations, organized merely for the purpose of private gain, except in respect of contracts which are *bad in themselves* [italics ours], the making of which is prohibited by a consideration of public morals, or justice, or of sound public policy, or prohibited by the statute law on grounds connected with the public good." *Dublin Fertilizer Works* v. *Carter,* 6 *Ga. App.* 835 (65 S. E. 1082). "Where, although officers of a corporation are without authority to execute a contract, they do in fact execute it, and the fruits thereof are applied to the proper corporate uses, the corporation will be liable thereon notwithstanding the want of authority in its officers. *Johnson* v. *Mercantile Trust Co.,* 94 *Ga.* 324 (21 S. E. 576).

*Towers Excelsior Co.* v. *Inman,* supra; *Jones* v. *Ezell,* 134 *Ga.* 553 (68 S. E. 303); *Bank of Garfield* v. *Clark,* 138 *Ga.* 789 (76 S. E. 95); *Georgia Hussars* v. *Haar,* 156 *Ga.* 21 (118 S. E. 563)." *Helping Hand Good Samaritan* v. *Bank of Smithville,* 33 *Ga. App.* 285 (125 S. E. 794). It is clearly apparent that, placed upon this ground, the granting of the nonsuit was error.

■ We recognize the rule that if for any reason, whether that assigned or not, the ruling of the court is correct, it should be affirmed, yet the insistence of learned counsel for the plaintiff in error, that there was insufficient proof of the authority of the agent, in signing the obligation, to bind the company, or that there was a ratification of such alleged unauthorized acts or acceptance of benefits thereunder, is not meritorious. Under the evidence as outlined, these questions are peculiarly within the province of the jury to solve, and it was not error for the judge of the superior court to sustain the certiorari.

*Judgment affirmed. Broyles, C. J., and MacIntyre, J., concur.*

ON MOTION FOR REHEARING.

We are aware of the principle that in proving a contract alleged to have been made with a corporation, it is necessary to prove the contract itself and the authority of the agent who purports to execute it. See *Ailey* v. *Lindale Co-operative Store,* 33 *Ga. App.* 63 (125 S. E. 717).

The contract in the present case was in writing, and it became necessary to show the authority of Luhn, the agent, to execute it, or that the corporation had knowingly accepted benefits thereunder.

The evidence shows that when the plaintiffs approached the defendant with reference to the matter they were directed by the defendant's president to see Luhn, who was in charge of these matters, that later Luhn, as representative of the defendant, attended the meeting of the plumbers and other wholesalers, that when the contract was tendered for his signature he announced that he was not in a position to sign, but would see his employer and report after the noon hour, and that he came back after the noon hour with the contract signed. This conduct on the part of the agent may be considered by the jury as superseding his announced limitation of authority, and mean in effect that he then had such authority from his principal. The ruling in *Greer* v. *Burnam,* 71 *Ga.* 31 (3), is not applicable to the facts of the present case.

If an agent executes a contract in behalf of a corporation and has not at the time of the execution of the contract authority to bind the corporation, upon his afterwards becoming clothed with such authority during the continuance of such purported contract he may bind the corporation by a ratification of such contract, provided he has no personal interest therein which makes him an adverse party to his principal. Luhn became such an agent during the existence of the contract, even if he was not clothed with authority when he executed it, August, 1930. He, while clothed with such authority in March, 1932, ratified the contract by acknowledging the benefits and promising to pay therefor. "Ratify," according to Webster's International Dictionary, means to approve and sanction, to authorize, to confirm, to make valid. It may apply to past as well as to present events.

There is no evidence in the record before us that Luhn had made himself such an adverse party, by considerations personal to himself, as would prevent him, after he became vice-president and general manager, from ratifying a contract made by him for the benefit of the corporation, although at the time he did not have express authority so to do. The evidence on the motion for a nonsuit does not even negative the authority of Luhn to act as agent in signing the contract, and inferentially supports such a finding.

*Rehearing denied.*