## ALEXIS INC. *v.* WERBELL.

No. 18130. ARGUED FEBRUARY 10, 1953—DECIDED MARCH 9, 1953.

*C. Baxter Jones Jr., Sutherland, Tuttle & Brennan* and *Sutherland, Asbill & Brennan,* for plaintiff in error.

*Miller & Head, Nall & Sterne* and *Paul Cadenhead,* contra.

CANDLER, Justice. This is a suit for injunction and for an accounting. The case on its pleadings, is as follows: In June of 1948, the plaintiff and two others formed a partnership for the purpose of manufacturing and selling infants' and children's garments, principally an article called "Handi-Panti," the idea and pattern for which was designed by them. The partnership had an operating fund of $3000, each partner having furnished $1000. Since the defendant had agents and consumer outlets well distributed over the country, the partnership orally agreed to sell its entire output to it at a price equal to two and one-half percent above actual labor and material costs. "Handi-Panti" soon proved to be a popular article for which there was great

demand, and the partnership, due to limited operating funds and no established credit, was unable to fill the defendant's orders and supply its demands therefor. The defendant orally agreed to take over the partnership's business of manufacturing "Handi-Panti" and other allied products and pay the partnership, so long as it manufactured them, an amount equal to two and one-half percent of the entire manufactured cost thereof. This proposition was accepted by the partnership, and the defendant subsequently complied with its agreement by paying it the amounts provided for thereby. Since the partnership had, in consequence of its prior agreement with the defendant, discontinued all manufacturing operations, the members decided to dissolve the partnership, and on November 29, 1949, the defendant by an instrument, which acknowledged receipt of a valuable and sufficient consideration therefor, obligated itself to pay each partner separately his pro rata part of the amount previously agreed upon, and the instrument recited: "This contract is to continue in force as long as party of the second part is in existence and shall bind successors to party of the second part." Thereafter and until October 13, 1950, the defendant made the payments provided for by its written contract of November 29, 1949. The defendant by resolution duly adopted on October 13, 1950, repudiated its prior oral agreement with the partnership, as subsequently renewed in writing with its members separately, on the ground that it was null and void, because (1) the officers purporting to act for the corporation in such undertakings were not authorized to act for it in such a transaction, which was completely out of the ordinary course of the corporation's business; (2) such officers were acting on their own behalf and not on behalf of the corporation; (3) no party or parties could in such a situation act on behalf of the corporation, since the corporation was not represented in the signing of such purported contracts; and (4) such purported contracts have not been approved by the directors on behalf of the corporation. The defendant, however, has made no offer to restore the benefits received under the oral contract with the partnership, but has continued to manufacture the articles covered by the contract. After the resolution of October 13, 1950, was adopted, the defendant notified the plaintiff that no further

payments would be made to him. Since then no payments have been made to the plaintiff, and the defendant is presently due him "approximately" $7000, but an accounting is necessary for the purpose of determining the correct amount actually due, and the petition contains a prayer for such relief. The petition also alleges that the business of the defendant is "over-extended"; that its affairs are being inefficiently managed; that the plaintiff has no adequate remedy at law; and that there is danger of the plaintiff losing his right to recover the amount actually due him unless the defendant is restrained and enjoined from incurring debts or disposing of its assets except in the normal course of trade or business. There is a prayer for such injunctive relief, and by an amendment to his prayers, the plaintiff prayed for an injunction prohibiting the defendant from manufacturing and selling any of the articles which his contract embraces without accounting to him for the amount due him. The court overruled general demurrers to the petition and also a motion to strike the plaintiff's amendment to his prayers. The defendant excepted, and came to this court by direct bill of exceptions.

1. There was no error in the rulings upon the demurrers or the motion to strike the amendment.

(a) A petition, though defective, which sets forth a cause of action, legal or equitable, for any of the substantial relief prayed for, is not subject to general demurrer. *Bowen* v. *Samuels*, 204 *Ga.* 718 (1) (51 S. E. 2d, 667).

(b) "A petition for accounting need not allege the amount due, but must allege facts showing that something is actually due." *Clements* v. *Hollingsworth*, 205 *Ga.* 153 (3) (52 S. E. 2d, 465). See *Gould* v. *Barrow*, 117 *Ga.* 458 (43 S. E. 702).

(c) Since the passage of the Uniform Procedure Act of 1887 (Ga. L. 1887, p. 64), "The superior courts, on the trial of any civil case, shall give effect to all the rights of the parties, legal or equitable, or both, and apply on such trial remedies or relief, legal or equitable, or both, in favor of either party, such as the nature of the case may allow or require." Code, § 37-901. So, where a plaintiff seeks by way of accounting to recover an amount alleged to be due him upon a contract, and to that extent may have prima facie an adequate remedy at law, and it

also appears from the allegations of the petition that his action for damages is not an adequate remedy, or that his legal remedy will be nugatory without the co-operation of equity, the aid of a court of equity may be invoked. *Lowery Lock Co.* v. *Wright,* 154 *Ga.* 867 (1b) (115 S. E. 801). In other words, under our present system of pleading, an action may be brought against one for a breach of his contract to recover the damages which have resulted therefrom up to the bringing of the action, and to restrain the defendant from a further violation of his contract. *Swanson* v. *Kirby,* 98 *Ga.* 586 (1) (26 S. E. 71). This being true, the petition was not subject to general demurrer on the ground that it alleged no proper cause for injunctive relief.·

(d) "It is well settled that the discoverer of a medical preparation or formula, even though such preparation be not patentable, has, like an author or an inventor, a property right in the product of his mental labors. This right was recognized at common law, independently of copyright or letters patent." *Stewart* v. *Hook,* 118 *Ga.* 445 (45 S. E. 369, 63 L. R. A. 255). To the same effect, see *Walker* v. *Berger,* 148 *Ga.* 326 (96 S. E. 627) ; and Tabor *v.* Hoffman, 118 N. Y. 30, 16 Am. St. R. 740, and the cases there cited. Likewise, and for the same reason, a designer's pattern for children's garments, such as "Handi-Panti," even though such product be not patentable, has, like an author, an inventor, or a discoverer, a property right in the product of his mental labors, and it seems very clear to us that such property right, like any other, may be transmitted by sale or otherwise by the designer to others. The property right in the pattern-designer's unpatented product is, however, not an unqualified one, and is only exclusive until it becomes the property of the public by being placed upon the market. But one who, by contract with the designer, has gained knowledge and possession of his product will be restrained by a court of equity from using it for his own gain in violation of his contract. See *Stewart* v. *Hook* and *Walker* v. *Berger,* both supra; Peabody *v.* Norfolk, 98 Mass. 452 (96 Am. D. 664) ; Salomon *v.* Hertz, 40 N. J. Eq. 400 (2 Atl. 379) ; Tabor *v.* Hoffman, supra; Kerr, Injunctions, § 440. If, however, one honestly and fairly comes into possession of a pattern-designer's unpatented product, he has the

right to use it, and equity will not restrain him from doing so; but if he obtains the right to use it by contract and later repudiates his contract and continues to use it, equity will intervene to prevent a continuation of the wrongful act. The case of Chadwick v. Covell, 151 Mass. 190 (21 Am. St. R. 442), which this court cited with approval in the *Stewart* case, supra, is, in principle, like the case now under consideration. There it appeared that the plaintiff had come into possession of certain secret formulas by gift from the administratrix of the discoverer, Dr. Spencer, and began to manufacture and sell the medicines. Subsequently the administrator de bonis non of Dr. Spencer's estate conveyed the formulas by deed to the defendant, and the plaintiff brought suit to enjoin him from manufacturing or selling the medicines. The court, Holmes, J., delivering the opinion, said: "So far as the right to manufacture and sell the medicines goes, the plaintiff's case may be disposed of in a few words. Dr. Spencer had no exclusive right to the use of his formulas. His only right was to prevent any one from obtaining or using them through a breach of trust or contract. Any one who came honestly to the knowledge of them could use them without Dr. Spencer's permission and against his will." To the same effect see Peabody v. Norfolk, supra, which this court also cited with approval in the *Stewart* case, supra. There is, accordingly, no merit in the contention that the contract relied upon in the instant case was without consideration and that the petition for that reason did not state a cause of action.

(e) No application of the doctrine of ultra vires acts will allow a corporation to retain and use the benefits of a contract and at the same time refuse to comply with its part of the contract under which they were obtained. *Johnson & Harrold* v. *Mercantile Trust Co.*, 94 *Ga.* 324 (21 S. E. 576). And this court has repeatedly held that, where the officers of a corporation, though without authority to do so, do in fact execute a contract in behalf of the corporation, and the fruits of it are received, retained, and applied to corporate uses, the corporation will be liable thereon notwithstanding any want of authority in its officers. *Merchants' Bank of Macon* v. *Central Bank of Georgia*, 1 *Ga.* 418 (1) (44 Am. D. 665); *Towers Excelsior & Ginnery Co.* v. *Inman*, 96 *Ga.* 506 (1) (23 S. E. 418); *Jones* v.

*Ezell,* 134 *Ga.* 553, 556 (68 S. E. 303) ; *Bank of Garfield* v. *Clark,* 138 *Ga.* 798 (2) (76 S. E. 95) ; *Georgia Hussars* v. *Haar,* 156 *Ga.* 21 (2) (118 S. E. 563) ; *Helping Hand of the Good Samaritan* v. *Bank of Smithville,* 33 *Ga. App.* 285 (3) (125 S. E. 794). So, where the president of a corporation, though by an ultra vires act, executes a contract in behalf of the corporation, and the corporation receives, retains, and applies to its uses the consideration furnished by the other party, it cannot subsequently repudiate the contract without first restoring and ceasing to use the benefits furnished by the contract. *Bank of Garfield* v. *Clark,* supra. "The principal cannot ratify so much of an unauthorized contract as operates in its favor and repudiate the obligation assumed in its behalf by the person claiming to act as its agent." *Ocilla Southern R. Co.* v. *Morton,* 13 *Ga. App.* 504 (2) (79 S. E. 480). See *Burch* v. *Old National Bank & Trust Co.,* 40 *Ga. App.* 497 (2) (150 S. E. 461). Thus tested, the allegations of the instant petition are sufficient to show a waiver of the defendant's right to repudiate the contract relied upon. As was held in *DeLamar* v. *Fidelity Loan & Investment Co.,* 158 *Ga.* 361 (123 S. E. 116), there must be restitution before there can be absolution. And, under the pleaded facts of the instant case, the defendant could not, without first making restitution, repudiate the contract relied upon for any reason recited in its resolution of October 13, 1950, a copy of which resolution was attached as an exhibit to the petition.

(f) "A corporation is an artificial person created by law for specific purposes, the limit of whose existence, powers and liabilities, is fixed by the act of incorporation, usually called its charter." Code, § 22-101. By the terms of our statutes, corporate existence is granted for a definite period of time, and "by the act of coming back to the source of its existence and obtaining authority to exist another period of years, the corporation obtains in reality a new charter" for a fixed period of time. *Federal Deposit Insurance Corp.* v. *Beasley,* 193 *Ga.* 727 (20 S. E. 2d, 23). By such act a new artificial person is born at law. Hence, a contract which by its terms is to continue of force so long as an artificial person has corporate existence, and "shall bind successors to parties of the second part," is not void because of indefinite duration insofar as this defendant is con-

cerned; as to it, the time during which the contract could be of force is definitely fixed. See *Pita* v. *Whitney,* 190 *Ga.* 810 (2) (10 S. E. 2d, 851). Nothing ruled in *Pepsi-Cola Co.* v. *Wright,* 187 *Ga.* 723 (2 S. E. 2d, 73), *Morrow* v. *Southern Express Co.,* 101 *Ga.* 810 (28 S. E. 998), and *Chappell* v. *F. A. D. Andrea Inc.,* 41 *Ga. App.* 413 (153 S. E. 218), as cited and relied upon by the plaintiff in error, conflicts with the ruling we now make. The *Pepsi-Cola Company* case involved a promise that, if a distributor of Pepsi-Cola would purchase from a bottler of Pepsi-Cola certain advertising signs and posters of that product at an expense of $1100, "he would be the sole distributor of Pepsi-Cola in the City of Atlanta and vicinity of Atlanta." The *Morrow* case involved a promise by a defendant carrier to haul the milk and butter of a plaintiff shipper "for as long as he desired." And the *Chappell* case involved a promise by a supplier to furnish to a dealer certain radio sets from the date of the contract and "as long as there was a reasonable sale and demand for said radio sets." In those cases the contracts were held to be unenforceable because they were too indefinite as to time. There no date was fixed or made ascertainable upon which the contract would terminate. Here, as to time, a completely different situation obtains; its duration is for a definite period of time insofar as the defendant corporation is concerned, and the petition is therefore not subject to general demurrer on the ground that the contract relied upon is too indefinite as to time to be enforceable against the defendant. We, of course, are not required in this case to determine whether or not the contract could be enforced after the defendant's charter expires, and after a new charter is obtained, should such be applied for and granted; that question is not presently before us.

2. Since no error is shown by the record, the judgment complained of will be

*Affirmed. All the Justices concur except Atkinson, P. J., not participating, and Duckworth, C. J., who dissents.*

DUCKWORTH, Chief Justice, dissenting. This record and the ruling in the majority opinion establish beyond dispute the following facts and law: (1) At the time the alleged contract was executed by the president of the corporation, the garments designed by the partnership were on the open markets. (2) Anyone,

including this corporation, could have copied them without the consent of and despite opposition from the partnership and without paying anything therefor to the partnership. (3) Every cent that the alleged contract would require the corporation to pay would be wholly unnecessary, if there was no valid contract requiring the same. (4) The alleged contract was void because it was never authorized by the directors of the corporation, hence the corporation was never obligated by a valid contract to pay something that the majority concede it would not have to pay unless required to do so by the terms of a valid contract. (5) The president executed the contract without authority from his corporation, and by its terms he was to personally receive a share of the payments it required.

Therefore, I must dissent from the opinion which sanctions taking the money of the corporation solely by virtue of an invalid contract, purportedly executed by the president in behalf of his corporation, without its authorization, and by which he receives a profit at the expense of his corporation.