1927.  OLIVER CONSTRUCTION COMPANY v. REEDER.

1. Mutuality is an essential element of every valid contract.
2. A contract by which one agrees to give to another employment for a.
   specified length of time, for the doing of work of variant character and
   expensiveness, at a price to be agreed on between the parties from time·
   to time (though the minimum price at which any of it will be offered.
   is stated), is not binding upon the parties, except in so far as the.
   parties thereunder shall from time to time agree upon the price; the
   person to whom the offer is made not being bound to do the work at
   the minimum price named, except at his option.

Action on contract; from city court of Statesboro—Judge Bran-
nen.  May 12, 1909.

Argued July 16, 1909.—Decided January 15, 1910.

*Johnston & Cone*, for plaintiff in error.

*Strange & Cobb*, contra.

POWELL, J.  Reeder sued the W. J. Oliver Construction Com-
pany for certain damages which he alleged he had sustained by rea-
son of the fact that the defendant had agreed to give him continu-
ous employment for two years in the grading of a certain railroad
which was being built, and had failed to do so.   To state the testi-
mony most favorably to the plaintiff (for the verdict of the jury in
his favor entitles him to have his case thus viewed), he made an
oral agreement with the company, which was then engaged as con--
tractor in the construction of a railroad from Statesboro, Georgia,
to Chattanooga, Tennessee, that if he would bring his teams, la-
borers, and grading outfit from the place in Tennessee where they
were then located, to the point where the work was being done, the
company would give him employment for grading a specified two.
miles of the work, at the price of seventeen cents per cubic yard,
and further continuous employment for a period of two years, at
such price, not less than seventeen·cents per cubic yard, as the
parties might thereafter agree upon.   After the two miles of grad-
ing were completed, and after he had been furnished certain other·
temporary work to do, the company failed to give him further em-
ployment; because of which his loss .ensued.   He measured his.
losses by the amounts he had to pay out on account of his teams.
etc. having been idle, and on account of having to sell his mules at.
less than the market price because of the situation in which he was.
left when the company failed to give him further work.   Substan-
tially this state of facts was set up in the petition; and possibly,

since we are holding that the court ought to have sustained demurrers to the petition, it is not necessary that we should recite the testimony taken at the trial, but we believe that the principles of law which we are stating can be made more perspicuous by showing some of the things that did develop in the testimony; for it is frequently fair to test the validity of legal principles by attempting to apply them to given states of facts. It developed in the testimony that after the plaintiff had brought his teams, outfit, etc., from Tennessee to the point where the work was being done, the defendant entered into a written contract with him by which he was to do two miles of work (mentioned above), at a price of seventeen cents per cubic yard for the grading, plus so much extra for moving loose rock and for "grubbing;" that this part of the work was completed and duly and satisfactorily paid for; that he was then put to helping another subcontractor on another section of the work, and this was satisfactorily done and paid for. The work at that time was being carried on near Statesboro, in a section of the State where railroad grading is not very difficult, comparatively speaking; and the work was progressing toward the mountainous section of the State, where the grading, etc., would necessarily be much more expensive. The defendants encountered difficulty in getting money for their work from the railroad company, and the work was generally suspended.

It would be profitless for us to elaborate the proposition that a contract, to be enforceable, must be mutual. Negotiations, propositions, and tentative understandings between parties do not become contracts until both parties are bound. Especially is this true as to contracts resting on mutual promises or undertakings. Generally speaking, if one party can not hold the other to the terms of the contract and compel him to perform under it, or bring an action against him for his refusal to perform, the transaction is unilateral, and no contract exists as against either party.

Take the present case: the plaintiff's action necessarily rests upon the proposition that the defendant broke the alleged contract by refusing to give him employment at seventeen cents per cubic yard for the grading; for there is no pretense that they ever agreed on any higher sum. Now suppose that the defendant had demanded of the plaintiff that he go to a point where the grading would be very difficult and expensive, so much so that he would have lost

large sums of money by attempting to do it at the price of seventeen cents per cubic yard, and the defendant had refused to offer him more than that sum to do the work there, could it have sued him for not working, and have held him bound for the difference between the price of seventeen cents per cubic yard and what it actually cost the defendant, at a fair value, to get the work done? We do not think that in that proposed case the defendant could have maintained such an action against the plaintiff; and this being conceded, it follows that the defendant was not bound to perform. If the contract had been silent as to the price, the court would have construed the contract as an agreement on the part of the defendant to have the work done, and on the part of the plaintiff to do the work, at a reasonable price; and a contract on this basis might have been enforceable against both parties; the question of price in that event being left to the jury, unless liquidated by the voluntary action of the parties. But the parties did not negotiate in this case on that basis. The plaintiff incurred the expense for which he is now suing on an open proposition, under which the parties were subsequently to complete the contract by agreeing on the price.

If this negotiation between the parties had taken on such definiteness as to become a contract, the plaintiff's measure of damage for a breach of it by the defendant's failure to furnish the promised work would primarily have been the difference between what it would have cost him to do the work and the price at which he had agreed to do it. So too, if it turned out that the plaintiff had made a losing contract, i. e., had contracted to do work at a price less than what it would have cost him to do it, the defendant would have had the right to show this fact in diminution of the damages that would otherwise be assessable on the theory that the plaintiff had expended time and money in preparation toward performing the contract. In other words, the plaintiff could have recovered from the defendant only his net loss, by reason of the defendant's failure to allow him to do the work. Hence it may be seen how important it is that the question of price should have been fixed between the parties, or else left in such shape that, by reason of the absence of agreement on the subject, the law itself could have fixed the price. The plaintiff had doubtless suffered loss, but he is merely in the unfortunate condition of one who, in the anticipation of making a contract, and led on by the belief that he could satis-

factorily contract, has incurred expenses in that direction, without first taking the precaution of closing the contract. For illustration, suppose a farmer who, by reason of the fact that he has large plantations, with a large number of tenants to supply, should say to one looking about for a location for a store, "if you will build your store near my farm, I will buy all the supplies for myself and tenants from you, if we can satisfactorily agree on the price, during the next two years," and the prospective merchant should, in anticipation of getting this trade, lay in a stock of goods and erect his store at a great expense, and thereafter, for reasons satisfactory to himself, the farmer should decline to trade at the store, would he be subject to an action by the merchant for damages for breach of contract? The law says not; and yet, in every essential element, the case is similar to the one now before us. We conclude that the court erred in not sustaining the general demurrer to the petition as finally amended. *McCaw Mfg. Co.* v. *Felder,* 115 *Ga.* 408 (41 S. E. 664); *Morrow* v. *Express Co.,* 101 *Ga.* 810 (28 S. E. 998); *Harrison* v. *Wilson Lumber Co.,* 119 *Ga.* 6 (45 S. E. 730); *Brown* v. *Bowman,* 119 *Ga.* 153 (46 S. E. 410); *Huggins* v. *S. E. Lime &c. Co.,* 121 *Ga.* 311 (48 S. E. 933); *Simpson* v. *Sanders,* 130 *Ga.* 265 (60 S. E. 541); *Cooley* v. *Moss,* 123 *Ga.* 707 (51 S. E. 625); *Lyon* v. *Lougee,* 3 *Ga. App.* 739 (60 S. E. 370); *Hart* v. *Ga. R. Co.,* 101 *Ga.* 188 (28 S. E. 637); Coldblast Co. *v.* Kansas City Co., 57 L. R. A. 699 (114 Fed. 77, 52 C. C. A. 25); Clark on Contracts, page 42.                               *Judgment reversed.*