### 3449.   CITIZENS BANK OF FITZGERALD *v.* BENTON.

1. If an agent is employed in order to obtain the benefit of his expert knowledge or skill in any particular business or profession, he may be clothed with discretion as to the time, quantity, and nature of service to be rendered by himself; and in such case he is liable alone for the proper exercise of this discretion for the benefit of his principal. Where one agrees to exercise his skill as an expert in determining whether anything should be done, and, if so, what, or to decide that nothing is necessary to be done, as the case may be, this agreement is a sufficient consideration to support a contract obligating the opposite party to pay for such services; and the contract may be just as valid as if the duties to be performed were minutely specified.

2. In any contest over the performance or non-performance of such a contract, of course, the legal maxim, "id certum est quod certum reddi potest," would control. There was no error in overruling the demurrer.

DECIDED JANUARY 15, 1912.

Action on contract; from city court of Fitzgerald—Judge Wall. March 25, 1911.

*L. Kennedy,* for plaintiff in error, cited: *Ga. Reports:* 1/220; 101/188; 115/408; 121/312, 716; 73/570; 101/810; 119/6 (3); 123/707, 710; 125/676 (4); 39/548; 46/278; 7 *Ga. App.* 276; 14 Wis. 630; 23 Wend. (N. Y.) 435; Clark, Cont. 10, 64; 7 Am. & Eng. Enc. L. (2d ed.) 114, 116; 17 Am. & Eng. Enc. L. (2d ed.) 4.

*Otis H. Elkins,* contra, cited: 20 Am. & Eng. Enc. L. (2d ed.) 49; 26 Cyc. 1021; 9 Cyc. 250; 49 N. J. 92; 1 L. R. A. (N. S.) 448.

RUSSELL, J. The Citizens Bank of Fitzgerald, on March 31, 1906, by a resolution of its stockholders, appointed L. O. Benton as financial agent of the bank for a term of five years expiring March 31, 1911. In the resolution it was stipulated that Benton was to be paid $500 a year for his services as financial agent. Ben-

ton's duties were prescribed as follows: "His duties as said agent shall be to examine and check the books, papers, and business of the bank at such times as he may see proper, either personally or by agent, to make financial connections and secure correspondents for said bank, and in general to do and perform all acts that he may deem necessary or expedient for the successful operation of said bank." Something more than two years later the Citizens Bank of Fitzgerald went into liquidation, its business being taken over by another bank; and on April 3, 1911 (the period for which the contract was made having expired), Benton brought suit for $1,500, for three years salary which he had not received.

The defendant filed a demurrer, in which it is insisted generally that the petition does not set forth any cause of action, and also that the alleged contract upon which the suit was based was unilateral, and void for want of mutuality and for lack of consideration. The demurrer raised also the point that it was not alleged that the plaintiff ever performed or offered to perform any service after March 31, 1908. The court overruled the demurrer, and the present writ of error is brought to test the correctness of that judgment. The only point worthy of serious consideration, raised by the demurrer, is the inquiry as to whether the contract is so lacking in mutuality as to avoid it. In the argument of counsel for the plaintiff in error it is stressed that "Mutuality of contract means that an obligation must rest on each party to do something in consideration of the act or promise of the other, that is, neither party is bound unless both are bound." And the rulings in *Cooley* v. *Moss*, 123 *Ga.* 710 (51 S. E. 625), *Glessner* v. *Longley*, 125 *Ga.* 676 (54 S. E. 753), *Oliver* v. *Reeder*, 7 *Ga. App.* 276 (66 S. E. 955), and other authorities setting forth the same principle, are cited. That this principle is well settled can not be controverted. However, the real question in this case is, whether the mere fact that the character and quantity of service to be rendered by Benton was discretionary with him raises such an implication that no services whatever would be performed as would deprive the contract of mutuality and render the agreement void.

To our minds the fact that the agent's duty was defined to be that of examining and checking the books, papers, and business of the bank at such times as he might see proper, and to do and perform other acts (or not do and perform them) as he might deem

necessary or expedient for the successful operation of the bank, does not necessarily relieve him from the necessity of performing duties which the law would assume to be of value. Though the occasions when service was to be rendered, and the nature of such service, were left discretionary with the agent, it is not to be implied from that fact that the contract was nudum pactum. The fact that he was clothed with a discretion involved the duty of exercising that discretion for his principal's best interest. It is rather to be inferred that the bank relied upon the plaintiff's skill and expertness, and financial connections, to determine what was necessary to be done; and if at a particular time it was not necessary that anything should be done, then, at the option of the agent, a policy of inaction was to be pursued as most profitable. The agreement under consideration is not unlike a contract for the employment of a physician or attorney at law to do whatever may be deemed necessary for the patient or client, as the case might be, during a specified time. In such a case there is, of course, a reservation that if it should be best that nothing be done for the patient or client (as the case might be), the very determination of that fact would be such an element of value as would supply consideration to the contract. If I employed a physician by the year it would not be essential to his compliance with the contract that he should compel me to take medicine when it was not necessary, but it would be his express duty to direct me to abstain from medical treatment if, in his professional judgment, medicine was unnecessary.

So much as to that portion of the contract which appears to leave the time and manner of performance of Benton's duty, as financial agent, discretionary with himself. However, in any event, the court properly overruled the demurrer, for the reason that one duty was unequivocally assumed by the plaintiff (though, considering the contract as a whole, even its positive statement would have been qualified by an element of discretion lodged in the financial agent). That duty was the making of financial connections and securing correspondents for the bank. And this phrase, not being qualified with any such expression as "when he may see proper," or "as he may deem expedient," would have prevented the contract from being unilateral.

We do not place our ruling, however, on this portion of the contract alone, because, while it is in the power of the defendant to

show any neglect of Benton's duty due to a failure to exercise his discretion properly, where he was charged with discretion, nevertheless it is undoubtedly true that where one agrees to exercise his skill as an expert in determining whether anything should be done, and, if so, what, or to decide that nothing is necessary to be done, as the case may be, the contract is just as valid as if the duties to be performed are minutely specified. The courts have recognized the validity of contracts by which one agrees to exercise his inventive ability for another, and yet the inventor can not agree to produce any definite results. Emerson v. Pacific Coast Packing Co., 96 Minn. 1 (104 N. W. 573, 1 L. R. A. (N. S.) 448); Connelly Mfg. Co. v. Wattles, 49 N. J. 92 (23 Atl. 123). See, also, 20 Am. & Eng. Enc. L. (2d ed.) 49; 26 Cyc. 1021.

2. In any contest over the performance or non-performance of such a contract, of course, the legal maxim, "id certum est quod certum reddi potest," would control.

So far as the objection urged by the demurrer that Benton did not tender to perform any service after March 31, 1908, is concerned, it is stated in the petition that the bank, without Benton's consent or approval, went out of business before that time, and, the bank itself having rendered performance on Benton's part impossible, the tender of an impossibility would have been nugatory, and is not required. There was no error in overruling the demurrer. *Judgment affirmed.*