20139. CHAPPELL *v.* F. A. D. ANDREA INCORPORATED.

DECIDED APRIL 15, 1930. REHEARING DENIED MAY 30, 1930.

414

*Hollis Fort, J. A. Hixon, R. L. Maynard,* for plaintiff in error. *Jones, Jones, Johnston & Russell,* contra.

BLOODWORTH, J. (After stating the foregoing facts.) The brief for the defendant in error is so thoroughly in accord with our views that we are incorporating much of it in this opinion. Did the court err in its ruling on the demurrer as complained of in the exceptions pendente lite? To determine this, let us consider the pertinent portions of the contract alleged in the answer and the cross-bill to have been breached by the plaintiff. These are as follows: "1st. Said plaintiff did then and there agree with this defendant to furnish and sell him said radio sets, all fixtures and attachments thereto complete, at the list price, to be ordered out by defendant and paid for in the regular course of business, and as fast as sales could be made and collections had by the defendant; said contract commencing from the date thereof, and to continue as long as there was a reasonable sale and demand for said radio sets. 3d. It was agreed between said plaintiff and this defendant that this defendant would follow the said plaintiff's plan of exploiting, advertising, introducing to the public, and selling said radio sets and appurtenances, which was by establishing dealers in the various localities of the territory assigned to defendant, and to give said dealers the exclusive right to sell in the particular territory out of the whole territory assigned defendant said radio sets, and all appliances and attachments thereto, and no other sales should be made in such territory of said radio sets and attachments, only by and through such dealers in such assigned territory. 4th. Said plaintiff did contract and agree with this defendant and did assign this defendant the whole of the State of Florida, except one county, to wit, Escambia county, as his exclusive territory in which to sell said goods under plaintiff's plan agreed upon as herein

set out, and in which to establish the dealers by reassigning exclusive territories to such dealers to sell said radio sets and attachments; and that said plaintiff during the life of said contract was not to make any sales, through itself or otherwise, of said sets and attachments, other than through this defendant and his dealers so established in different sections of said State by him; that said territory, the whole of the State of Florida, except the county of Escambia, it was agreed should be thus assigned to as the exclusive territory of this defendant, and this defendant was not authorized and empowered to operate in any other territory, or to sell said goods through dealers or otherwise than in said State of Florida, with said exception aforesaid. 6th. That under said contract and agreement the said plaintiff at said time required of this defendant to move to the State of Florida, establish headquarters, and secure offices, storage-rooms for said goods in the city of Jacksonville, said State, employ traveling salesmen, establish a distributing point, engage dealers in different localities, assign to them exclusive territories, contract with them for the exclusive sale of said goods in said territory, to demonstrate, through himself and his agents, said goods at every chance and opportunity, to advertise, exploit, and bring to the public mind the same, for the purpose of facilitating sales, to keep books at said distributing point whereby each and all of the sales and payments made thereof with each dealer, account of all goods received and account of goods sent back for repairs, and account of all defective parts returned, etc., were to be kept; to employ experts to instruct dealers how to set up and operate said radio sets in each of the localities in which dealers were thus stablished; all of which was to be paid for by this defendant out of the discount aforesaid, allowed him under said contract."

Plaintiff's demurrer was based on three propositions, viz.: "1. That the contract is too indefinite in its terms to be capable of enforcement or to form the basis for computing damages. 2. That by reason of its indefiniteness as to time, it was terminable at the will of either party. 3. That there was no consideration flowing to the plaintiff which binds him as to any unperformed portion of the alleged contract." As to the first of these, the only obligations on the part of the plaintiff were to sell Chappell radio sets, fixtures, etc. at the list price, to be ordered out by Chappell and to be paid

for in a stated manner; to sell no one but Chappell in a stated territory. How many radio sets was he to ship? How many was Chappell to take? Suppose Andrea had sold no one else, but had refused to ship Chappell more than one set a year, and Chappell sought specific performance; how many could the court order shipped by reason of the contract? Certainly not as many as Chappell wanted. Under the ruling in *McCaw Manufacturing Co.* v. *Felder,* 115 *Ga.* 408 (41 S. E. 664), such a contract would not be enforceable. That case is authority for the proposition that a contract to sell an indefinite quantity of goods is not enforceable, and that all the goods one "wants" is indefinite. But Chappell did not even agree to take all he wanted. He certainly did not agree to take all he needed. He did not agree to take any quantity at all, and Andrea did not agree to ship any specified quantity. In *McCaw Mfg. Co.* v. *Felder,* supra, it was held that a promise "must be sufficiently definite both as to time and subject-matter. The promise itself, taken in the light of the circumstances, must contain sufficient data to enable it to be enforced." See *Huggins* v. *Southeastern Lime & Cement Co.,* 121 *Ga.* 311 (48 S. E. 933). In that case (see page 312) Huggins agreed to "push" the sale of the seller's cement. Defendant agreed to do no more. He agreed only to follow Andrea's plan of exploitation. One certainly is no more definite than the other. In the *Huggins* case there was no agreement to sell a specified amount of cement. In this case there was no agreement to ship a specified number of radios. In neither was there an agreement to purchase any stated quantity. In the *Huggins* case the court said, "The contract was clearly unilateral. While it contained an agreement to furnish cement, there was nothing in the contract which amounted to an obligation to purchase cement in any stated or otherwise definite quantity. See *Harrison* v. *Wilson Lumber Co.,* 119 *Ga.* 6 (3) (45 S. E. 730), and cit. The paper relied upon as a contract contained a mere offer to sell at stated prices during a given time. Until this offer was accepted the cement company was at liberty to withdraw." While it was held in the *Huggins* case that the cement company was obligated to ship any cement ordered before a rescision of the contract, and Huggins could have recovered for his loss on any cement actually ordered, if he had not misapprehended his cause of action, there is no allegation in the instant case that any had been ordered. Yet the de-

fendant in this case is seeking in his cross-bill to recover on the same basis on which the Supreme Court said Huggins could not recover, namely, the loss of profits, rather than the difference between the contract and the market price. It seems that on principal the Huggins case can not be differentiated from the instant case, and that the decision in that case is absolutely controlling on this court. See also *Morrow* v. *Southern Express Co.,* 101 *Ga.* 812 (28 S. E. 998); *Hart* v. *Georgia Railroad,* 101 *Ga.* 188 (28 S. E. 637); *Harrison* v. *Wilson Lumber Co.,* 119 *Ga.* 6 (45 S. E. 730); *Simpson* v. *Sanders,* 130 *Ga.* 265 (60 S. E. 541). In the instant case it can not be said that there was more than an offer on the part of Andrea Inc. to ship radios to Chappell as ordered. Andrea Inc. possibly would have been bound to ship all radios ordered before notifying Chappell of withdrawal from the contract, but certainly was not bound to do more.

As to the second proposition: The time which the contract was to run was too indefinite. The only duration of the contract stated is that it was "to continue as long as there was a reasonable sale and demand for said radio sets." Who was to determine the reasonableness of the sale? If it were left to the jury, what could the court have said, in its charge to the jury, constituted a "reasonable sale?" Is there any criterion for determining what is a reasonable sale of radios in the State of Florida? It can not amount to a permanent contract, but even if it should, it has been held that such a contract is terminable at will. Lord *v.* Goldberg, 81 Cal. 596 (22 Pac. 1126, 15 Am. St. R. 82). In the case of Davie *v.* Lumberman's Mining Co., 93 Mich. 491 (53 N. W. 625, 24 L. R. A. 357), a contract to work in a mine "and to receive $1.50 per ton for all the ore they produced as long as they could make it pay" was held too indefinite as to time.

As to the third proposition: There was no consideration for the unperformed portion of the contract. This objection is based on the cases of *Huggins* v. *Southeastern Lime & Cement Co.,* and *Harrison* v. *Wilson Lumber Co.,* supra. In both of those cases certain things were done under the contract, or promised to be done under it, and yet, because there was no definite quantity of goods to be shipped, the court held that the alleged contract was merely an offer to sell, and that the seller was bound only to ship the goods ordered before a rescission. Counsel for the defendant contend

that the expenditure of money by Chappell fixed the obligation of Andrea Incorporated, but nowhere have they stated or been able to state what that obligation was. What could the court below have charged the jury was the obligation of Andrea Inc. and how many radios was Andrea Inc. obligated to ship? Certainly if there was no contract to breach, Chappell is not entitled to any expenditures that he made. The most that can be said is that Andrea Incorporated was obligated to pay him the reasonable value of the services set out, and that reasonable value is fixed by the contract as 55%. There is no contention that this amount was not paid. The contract further alleges, in the fifth subparagraph of the 5th paragraph, that this 55% was to be his only compensation, and that out of it he was to pay all expenses. Subparagraphs a, b, c, f, g, h, j, and m of the third paragraph are based on the breach of the contract which we have heretofore discussed fully. If there was no contract to breach, the defense, which depended solely upon that breach, was properly stricken. If the cross-bill sets out no cause of action, the defenses to these subparagraphs are worthless.

In conclusion, we believe that from the contract sought to be set up by the defendant, the court could not have a clear idea of the basis for determining damages, and the basis for determining the duration of the contract as set up in the answer. The quantity of radios to be shipped, and consequently the damages for failure to ship them, can not possibly be determined, nor can the intended duration of the contract. This being true, the trial judge did not err, either in his ruling on the demurrer or in directing a verdict for the plaintiff.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*