Where a purported contract of employment contains restrictive covenants prohibiting the employee for a period of five years after termination of the employment provided by the contract from engaging in competition with his employer, either as owner or employee in a similar business, but fixes no definite time or place of employment, no duties to be performed, and no compensation to be paid to the employee, such purported contract is so indefinite in its terms as to amount to no enforceable contract, even though the employee actually rendered services in behalf of the employer subsequently to the execution of such purported contract. Hence the employer, in an action at the instance of the employee, was properly enjoined from interfering with the efforts of the employee to obtain employment in a competitive business, where it was shown that the employer had made such interference and had threatened to continue so to do.
 No. 14733. JANUARY 6, 1944. REHEARING DENIED FEBRUARY 11, 1944.
J. C. Brown filed an equitable petition in DeKalb superior court against H. Russell Weill and Mrs. Bessie L. Weill, trading as Russell Weill Distributing Company, in which he alleged that a purported contract was signed by him and Russell Weill, trading as aforesaid, on July 6, 1940, which, omitting the formal parts, reads as follows:
"Whereas, party of the first part is engaged in the business of manufacturing, repairing, distributing and selling shock absorbers, generators, fuel pumps and all parts incidental thereto, together with such other parts as may be manufactured, repaired or distributed in a like business; and whereas, party of the second part who is known as the employee and who is desirous of obtaining employment with party of the first part and in the course of such employment, *Page 329 
said second party may and will be assigned to duties that will give him knowledge and information of confidential importance relating to the conduct and details of the business of the party of the first part, for which no money damages could adequately compensate him if second party should enter into the employment of a rival concern or should go into business as competitor in a competitive field; now, therefore, it is mutually agreed as follows: 1. The party of the first part agrees to employ party of the second part beginning this date for an indefinite period, and said employment may be terminated and said employment shall be terminated upon the giving of written notice by first party to second party. 2. The nature of the duties and the employment of second party, under this contract, shall be such as shall be assigned to him, from time to time during his term of said employment. 3. That the second party agrees to engage in no other occupation during said period and to use his best endeavor to promote the business of the first party, and does further agree well and successfully to perform any and all duties that shall be assigned to him by party of the first part or any of his authorized agents. 4. Party of the second part will not, directly or indirectly, furnish or divulge the names of any customers of party of the first part or of any prospective customers, or of any persons who have heretofore traded and dealt with party of the first part, nor will he at any time [disclose] or furnish to any person or corporation, the method of conducting business of party of the first part, nor will he furnish to any person or corporation a description of any of the methods of obtaining business or of advertising or of obtaining customers or of the manner of the process of manufacturing, or of distributing of any of the products of party of the first part. 5. Party of the second part agrees and covenants that he will not, for a period of five years after the termination of this contract of employment, anywhere in this state or in any state of these United States of America, engage in for said five-year period either directly or indirectly in a like or representative business, nor will he enter the employment of or render any services to any other person or corporation engaged in a like or competitive business for said period of time; and that during the said five-year period and after, he will not engage in a like or competitive business on his own account, or become interested therein, directly or indirectly as an individual, *Page 330 
partner, stockholder, director, officer, clerk, principal, employee, or in any other relation, or capacity, whatsoever. 6. That upon the termination of this contract, and for the five-year period thereafter, the party of the second part does agree that should he enter into the employ or service or otherwise act in aid of the business, of any rival company or concern, engaged in the same or a similar general line of business, or competitive line of business and as above described, the party of the first part shall be entitled to an injunction, to be issued by any competent court of equity, enjoining and restraining the party of the second part."
It was alleged that the plaintiff worked for the defendants until June 15, 1943, when his employment was terminated, as he contends, by having been discharged by the defendants. Since the termination of his employment, the defendants, through their agents and employers, have attempted to prevent him from securing employment with Richmond Motor Company of Richmond. Virginia, by advising said motor company that he had a contract with Russell Weill Distributing Company, which prohibited him from engaging in business of like and similar nature, or performing similar services for any other concern for a period of five years after the termination of said contract, and that Russell Weill Distributing Company would cause that company considerable trouble if they employed Brown. Russell Weill, acting for his company, advised the plaintiff that whenever and wherever he found him at tempting to make a connection with any automobile concern, he would do everything in his power to keep him from obtaining such employment. The plaintiff is unskilled in any other business; he has been engaged in that type of business for about seven years; has developed himself in that particular business; and if he is prohibited from engaging in similar types of business, and from using his knowledge and skill in reconditioning automobile parts, he will suffer irreparable injury; and that he has no adequate remedy at law. It was further alleged that the plaintiff had acquired no secret information concerning the business of the defendants, since his method of doing business was of general and common knowledge in the automobile industry. The contract was alleged to be illegal and void, because (1) it was against public policy and in restraint of trade; (2) there was no reasonable limitation as to territory; (3) that the five-year period was an unreasonable restriction *Page 331 
as to the time of its operation; (4) that the defendants through the terms of the contract were seeking to require the plaintiff to remain in their employment for an indefinite period of time, the contract being subject to be terminated only upon written notice at the instance of the defendants, with no like provision available to the plaintiff, and with the further provision that after the termination of the contract, the plaintiff was forbidden to pursue his occupation for a period of five years; (5) that the contract was too vague and indefinite in that the length of its duration was not definite; (6) that it lacked mutuality, in that it bound the plaintiff for an indefinite length of time, but there was no corresponding duty on the defendants to employ the plaintiff for any length of time. He prayed that the defendants be temporarily restrained and permanently enjoined from interfering with his effort to obtain employment, either directly or indirectly, from attempting to prevent him from engaging in similar activities with his new employer, the Richmond Motor Company, from attempting to enforce any of the provisions of the contract, and from instituting any proceeding, legal or equitable, in an attempt to enforce same; that the court by its decree declare said contract to be illegal, invalid, valid and of no binding effect upon him. The defendants answered, denying that the plaintiff was discharged and insisting that he voluntarily terminated his employment with them. They further averred that the plaintiff had acquired knowledge of its method of rebuilding automobile parts, and that their method was unknown to competitors. Further, they insisted upon the terms of the purported contract being complied with, and contested the right of the plaintiff to have the contract declared illegal, void, and of no effect.
The evidence on the interlocutory hearing was in conflict as to whether the plaintiff was discharged, or voluntarily left his employment, and as to whether any of the processes used by the defendants in connection with the business in which they were engaged, knowledge of which the plaintiff acquired by virtue of his employment, were generally known and used by competitors. The defendant operated only two places of business, one in Atlanta, Georgia, and the other in Richmond, Virginia. The evidence further disclosed that the plaintiff had been for several years previous to the date of the contract of employment an employee *Page 332 
of the defendants engaged in the same business. There was some evidence to the effect that the defendants, through one of their agents, had informed the Richmond Motor Company of the contract, and that if they employed the plaintiff they would experience trouble. Russell Weill testified that he insisted upon enforcement of the contract as to all of its provisions.
The judge, after hearing the evidence, enjoined the defendants from directly or indirectly seeking to prevent the plaintiff from obtaining employment in Georgia, Virginia, or elsewhere, and from seeking in any manner to enforce the restrictive covenants of the contract between the parties; the defendants were further enjoined from attempting to enforce the provisions of the contract by court action except in the present case. The case is now before this court on exceptions by the defendants to that judgment.
The court is called upon to decide in the first instance whether the purported contract is, as a matter of law, a valid and enforceable contract. Does the instrument meet the requirements of the law in reference to contract essentials so as to give to either of the parties thereto any enforceable rights thereunder? "A contract is an agreement between two or more parties for the doing or not doing of some specified thing." Code, § 20-101. "In order that there may be an agreement, the parties must have a distinct intention common to both and without doubt or difference. Until all understand alike, there can be no assent, and therefore no contract. Both parties must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode is agreed on by which it may be settled, there is no agreement." 17 C. J. S. 359, § 31. "Therefore, if the offer is in any case so indefinite as to make it impossible for a court to decide just what it means, and to fix exactly the legal liability of the parties, its acceptance can not result in an enforceable agreement. So, where a contract of employment does not specify its duration, the position to be filled, nor the wages, it is void for uncertainty." 17 C. J. S. 365, § 36. *Page 333 
"When there is a contract for the performance of services by one party, in consideration of the payment of money therefor by the other party, the nature and character of the services to be performed and the amount to be paid therefor must be of such character that it can be ascertained what services are to be performed, and what sum of money is to be paid therefore."Mosteller v. Mashburn, 64 Ga. App. 92, 96 (12 S.E.2d 142). "In a contract of employment the compensation to be paid is a material part, and until the parties have agreed upon a definite amount to be paid the contract is incomplete; and until each party has assented to the material parts of the contract either party has a right to withdraw therefrom." Pita v.Whitney, 190 Ga. 810, 814 (10 S.E.2d 851). How does the contract under consideration appear when measured by the well-settled rules of law set out above? The contract of employment is for "an indefinite period." The duties to be performed, the services to be rendered, the place of employment, and the amount of compensation, all of which are vital parts of the purported contract, are all uncertain and indefinite. As to these essentials the contract was without the assent of the parties. Such contracts because of indefiniteness are unenforceable. On this question generally, see OliverConstruction Co. v. Reeder, 7 Ga. App. 276 (66 S.E. 955);Chappell v. F. A. D. Andrea Incorporated, 41 Ga. App. 413
(153 S.E. 218); Henderson v. Curtis, 57 Ga. App. 892
(197 S.E. 65); Harrison v. Wilson Lumber Co., 119 Ga. 6
(45 S.E. 730); Prior v. Hilton Dodge Lumber Co., 141 Ga. 117
(80 S.E. 559); Bankers Trust Audit Co. v. Farmers Merchants Bank, 163 Ga. 352 (136 S.E. 143); Pepsi-Cola Co.
v. Wright, 187 Ga. 723 (2 S.E.2d 73).
We have examined the cases of Brown v. Floding, 173 Ga. 400
(160 S.E. 604), Webb v. Pullman Co., 57 Ga. App. 776
(196 S.E. 477), and Brown v. Bowman, 119 Ga. 153
(46 S.E. 410), cited by the plaintiffs in error, and find nothing in them in conflict with the rulings here made. In those cases incomplete contracts were held to be binding on the theory that sufficiently definite offers and proposals had been made by one party and acted upon by the other party, so that the incomplete contract had been made complete by the act of performance. In the case now under consideration the offer or proposal is so indefinite as to make it impossible for courts to determine what, if anything, was agreed *Page 334 
upon, therefore rendering it impossible to determine whether there has been performance. Under the foregoing rulings, it is unnecessary to consider any of the other provisions of the contract, or to determine the validity thereof as to enforceability. There was no error in granting the injunction.
Judgment affirmed. All the Justices concur, except Jenkins,P. J., absent on account of illness.